**Gordon C. PETERSON, Plaintiff,**

v.

**Robert J. SHERAN et al., Defendants.**

**Civ. No. 5–76–73.**

United States District Court,
D. Minnesota, Fifth Division.

July 25, 1979.

Gordon C. Peterson, pro se.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., LeRoy C. Paddock, Sp. Asst. Atty. Gen., St. Paul, Minn., for defendants.

## MEMORANDUM AND ORDER

HANSON, Senior District Judge, Sitting by Designation.

This action was brought pro se by Gordon C. Peterson, a disbarred attorney, pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1343, to obtain declaratory relief and to compel the issuance of a license to practice law in the State of Minnesota. Plaintiff Peterson brought suit against forty named defendants: members of the Minnesota Supreme Court, the Minnesota Supreme Court Clerk, members of the Lawyers Professional Responsibility Board, and members of the State Board of Law Examiners and the Minnesota Bar Association.

The plaintiff alleged that the defendants, who are in charge of licensing Minnesota attorneys, set up a religious test in violation of the First Amendment, and denied him due process and equal protection under the Fourteenth Amendment. Thirteen of the forty defendants were served, and twelve defendants filed answers. The cause was tried to the Court.

Plaintiff Gordon C. Peterson was disbarred for "reprehensible" conduct based on evidence that Peterson prepared a fictitious criminal information in order to extort $1,000 from a client, and that Peterson sold property belonging to an imprisoned client without giving that client an accounting. *In re Application of Peterson*, 260 Minn. 339, 110 N.W.2d 9 (1961). Peterson now claims that the forged information was an office joke, and that the charge of improper accounting is false. Since his disbarment, Peterson has filed four petitions for reinstatement. One petition was voluntarily withdrawn in 1965, and the other three petitions were denied. *In re Application for Reinstatement of Peterson*, 275 Minn. 559, 146 N.W.2d 768 (1968); *In re Application for Reinstatement of Peterson*, 288 Minn. 550, 181 N.W.2d 341 (1970); *In re Application of Peterson*, 274 N.W.2d 922 (Minn.1979).

Peterson's latest petition for reinstatement was filed in 1974. From the time the

petition was filed in 1974 to the time it was denied in 1979, Peterson was given three hearings, and the hearing officers from each hearing recommended denial of Peterson's petition for reinstatement. The Minnesota Supreme Court originally denied the latest petition on March 29, 1976, then agreed to a rehearing *en banc*. Before the hearing was held, however, Peterson instituted this suit in federal court. The Minnesota Supreme Court postponed the rehearing pending the outcome of this federal lawsuit.

In federal court the defendants filed a motion for summary judgment on the ground that the federal court lacked jurisdiction and that the plaintiff failed to state a claim on which relief could be granted. This Court (per Judge Miles W. Lord) ruled on February 13, 1978 that it would have jurisdiction over those claims the state court did not consider; that the Minnesota Supreme Court justices are immune from monetary damages but are not immune from equitable relief; and that in the interests of comity and federalism, the federal proceedings should be stayed pending a decision by the Minnesota Supreme Court. Subsequently, the Minnesota Supreme Court denied Peterson's petition for reinstatement. Trial was set in the federal action.

### I. Preliminary Matters

At trial this Court preliminarily dealt with two motions: first, defendants' motion to dismiss; and second, defendants' motion to quash two subpoenas issued at the request of the plaintiff.

### Motion to Dismiss

Defendants filed a motion to dismiss 20 days before the trial date, and filed a supporting brief several days later; plaintiff submitted a memorandum in opposition to the motion. Because of the relatively late date of the filing of the motion and because of the logistics involved in this Court's trial

of the matter by special designation, a preliminary ruling on the motion was issued limiting the litigation to the trial of the equal protection claim with leave for the parties to orally argue the issues at the time of trial. This Court heard oral arguments the day of trial and reaffirmed its preliminary ruling that the triable issue was limited to the equal protection claim.

The defendants' motion to dismiss was based on two grounds: first, that this Court lacks subject matter jurisdiction; and second, that the plaintiff has failed to state a claim for which relief may be granted, on the theory that the state court decision is res judicata.[1]

 *Jurisdiction.* This Court has entertained serious doubts about its jurisdiction to hear the cause. A lower federal court is wholly without jurisdiction to review, in an appellate capacity, the merits of a state disciplinary proceeding. *See Doe v. Pringle*, 550 F.2d 596, 597 (10th Cir. 1976); *MacKay v. Nesbett*, 412 F.2d 846, 846 (9th Cir.), *cert. denied*, 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969); *Jones v. Hulse*, 391 F.2d 198, 201 (8th Cir.), *cert. denied*, 393 U.S. 889, 89 S.Ct. 206, 21 L.Ed.2d 167 (1968); *In re Rhodes*, 370 F.2d 411, 413 (8th Cir. 1967); *Ginger v. Circuit Court for the County of Wayne*, 372 F.2d 621, 625 (6th Cir. 1967); *In re Noell*, 93 F.2d 5, 7 (8th Cir. 1937). As defendants point out, the United States Supreme Court has exclusive jurisdiction to review final judgments of a state court. 28 U.S.C. § 1257. Even review by the United States Supreme Court is limited to narrow constitutional issues. *See Theard v. United States*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957); *Schware v. Board of Bar Examiners*, 353 U.S. 232, 239, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957); *Konigsberg v. State Bar of California*, 353 U.S. 252, 273, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957). Although the case law overwhelmingly supports very limited federal court review of state court disciplinary proceedings, the

---

1. Inasmuch as the defendants have filed a responsive pleading, a Rule 12(b) motion is untimely. The Court, however, may treat the motion to dismiss for lack of jurisdiction as a suggestion under Rule 12(h)(3) that the Court lacks subject matter jurisdiction. The motion to dismiss for failure to state a claim might be treated as a motion for summary judgment.

Eighth Circuit, in a footnote in *Goodrich v. Supreme Court of South Dakota*, 511 F.2d 316, 318 n.8 (8th Cir. 1975), indicated that a federal court is not entirely without jurisdiction to consider some claims arising out of a state disciplinary proceeding:

> [8] In *Jones v. Hulse*, . . . . we declined to entertain an action alleging violations of 42 U.S.C. § 1983 where the claims raised had been previously decided by the state court on the ground that federal courts are without jurisdiction to review, in an appellate capacity, state courts. It is clear from the cases cited in *Jones*, however, that where the federal action is brought under 42 U.S.C. § 1983, the federal court does have jurisdiction to consider the constitutional claims not previously decided by the state court. 28 U.S.C. § 1343(3). (Citations omitted.)

■ This Court reads the *Goodrich* footnote to mean that it has jurisdiction to review those constitutional claims not "previously decided" by the state court. In the preliminary order of June 11, 1979, this Court said:

> In this jurisdictional context in which comity concerns predominate, the question is not whether the legal and factual issues in this Court and state court are identical in the res judicata/collateral estoppel sense, . . . but whether the constitutional issues sought to be litigated in federal court are inherent in the decision of the state court decision . . . If the constitutional issues are inherent in the decision of the state court, then in reaching its decision it is appropriate to presume that the state court decided the issues adversely to plaintiff, especially where, as here, the state court was fully aware of plaintiff's pending federal constitutional claims at the time it denied reinstatement.

June 11, 1979, Preliminary Memorandum and Order, p. 6.

■ The Minnesota Supreme Court summarized the events that led to the plaintiff's original disbarment and his subsequent attempts to be reinstated, and outlined the procedural protection afforded the plaintiff in his latest petition for reinstatement. In light of the thorough review by the Minnesota Supreme Court, it is reasonable to presume that the state court would have recognized a procedural or substantive due process violation in the denial of the petition for reinstatement. The finding that there was no denial of substantive or procedural due process inheres in the state court opinion. The litigation of the due process issue in the federal litigation would require an examination of the records already thoroughly reviewed by the Minnesota Supreme Court, and such an examination by this Court would be similar to a review of the merits. *See Schware, Konigsberg, supra.* A federal district court lacks jurisdiction for such appellate review.

In much the same way, the Minnesota Supreme Court discussed the standards by which it would review a petition for reinstatement; in particular, the Minnesota court carefully distinguished the standard of "professional moral character" from a standard of "personal moral character." This explanation of the required "moral" standard eliminates any reasonable basis to presume that an applicant must pass an impermissible religious test in seeking reinstatement. As with the due process issue, any examination of this establishment of religion claim would require improper review of the state court decision by a federal district court.

This Court, therefore, lacks jurisdiction to consider either the due process or establishment of religion claims inherent in the Minnesota Supreme Court opinion. An examination of those claims would require appellate review of the state court judgment, and this Court lacks jurisdiction to conduct such review.

As to the equal protection claim, however, it is not clear that the Minnesota Supreme Court examined this issue. In fact, the plaintiff's equal protection claim would require the introduction of additional evidence not ordinarily available in a state disciplinary proceeding. The plaintiff alleges that the defendants selectively discriminated against him. Such a claim, as

discussed *infra*, requires proof that the treatment accorded the defendant was different from the treatment accorded other individuals similarly situated, and that the different treatment was the result of an invidious intent to discriminate. This evidence would not normally be available in a disciplinary proceeding, and there is no indication that the Minnesota Supreme Court examined the issue.

■ Since the equal protection issue does not inhere in the state court opinion, and since it does not appear that the Minnesota Supreme Court reviewed any evidence relating to the equal protection claim, this Court would not be required to conduct appellate review of the state court decision. The equal protection issue apparently was not "previously decided" by the state court, and, as this Court interprets the case law synthesized in *Goodrich*, it finds that a federal district court may have jurisdiction to review the equal protection claim under the facts of this case.

*Res Judicata.* The defendants' motion to dismiss also urged that the plaintiff failed to state a claim on which relief may be granted because the Minnesota Supreme Court's decision was res judicata as to all issues.

■ The doctrine of res judicata requires that the issues must have been actually raised in the prior lawsuit, or that they could have been raised in the prior lawsuit and the "second suit concerns the same operative nucleus of fact." *Robbins v. District Court of Worth County*, 592 F.2d 1015, 1017 (8th Cir. 1979). The opinion of the Minnesota Supreme Court indicates that the First Amendment and due process issues inhere in the state court decision. The equal protection issue, however, apparently was not considered or decided by the state court. The equal protection claim, as previously discussed, would require the introduction of additional evidence not considered in the disciplinary proceedings. Thus, the equal protection issue was neither previously decided nor did it arise out of the same nucleus of operative fact. The Minnesota Supreme Court's decision would not be res judicata as to the equal protection issue.

This Court's preliminary ruling of June 11 limited the litigation to the equal protection issue. After the parties argued orally at trial, the Court reiterated that preliminary ruling, and it is hereby made final. This Court will examine only the alleged equal protection violation in its findings of fact and conclusions of law.

### Motion to Quash

The Court upon motion by defendants quashed two subpoenas issued at the request of the plaintiff. A subpoena duces tecum was issued to the administrator of the Lawyers Professional Responsibility Board to produce the files and records relating to 62 Minnesota attorneys investigated by the Board. A subpoena ad testificandum was issued to Robert J. Sheran, the chief justice of the Minnesota Supreme Court. These subpoenas were issued six days before the trial of the matter.

*Subpoena duces tecum.* The plaintiff subpoenaed 62 files in the custody and control of the Lawyers Professional Responsibility Board. These documents concerned complaints filed against the named attorneys. The plaintiff earlier had attempted to obtain, through discovery, all files relating to attorneys against whom complaints had been lodged with the Lawyers Professional Responsibility Board. The motion to compel the production of those documents was denied by Magistrate McNulty on May 25, 1979, as "much too burdensome, broad, and vague to be enforced." The plaintiff failed to appeal that adverse judgment. *See* 28 U.S.C. § 636(a), (b)(1)(A). Moreover, the subpoenas were more narrowly tailored only in that the plaintiff demanded files on 62 named attorneys; but the subpoena of so many documents is not significantly different from the fishing expedition of the earlier discovery attempt, which the magistrate denied.

This federal lawsuit was commenced more than two years ago, and the plaintiff's latest petition for reinstatement was denied six months before the trial date. This

Court provided for expedited discovery procedures after the trial date was set. Through the prudent use of discovery plaintiff no doubt could have discovered much of the information contained in the documents in question. Plaintiff had ample time to do so.

■ In addition, as the magistrate pointed out in the earlier discovery action, with specified exceptions, the subpoenaed files are made confidential by Rule 20 of the Minnesota Rules of Professional Responsibility. Rule 20 allows only limited disclosure of information from the files. The Lawyers Professional Responsibility Board may disclose the names of those attorneys being investigated by the Board, and may disclose limited information about the disposition taken by the Board after investigation. All other information is deemed confidential. In considering the motion to quash, the Court must balance the state rule of privilege against the need for the documents. *See United States v. Nixon,* 418 U.S. 683, 707, 711–12, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). The magistrate recognized the important policy behind the rule of confidentiality:

> Wholesale disclosure of every accusation leveled against attorneys can be a muckraker's holiday, but could serve no useful public purpose. This Court will not take it upon itself to open the Pandora's box without a showing by plaintiff that the prospective harm is outweighed by his need.

Memorandum Decision and Order of May 25, 1979, p. 5.

■ In balancing the importance of the confidentiality of the documents with the alternative means to obtain the same information, the motion to quash must be sustained.

Moreover, the files under subpoena apparently concern complaints against Minnesota attorneys in connection with disciplinary proceedings. There is no indication that any file under subpoena would yield any information about reinstatement proceedings. As such, the files under subpoena are likely to have attenuated relevance, if any, to a showing of differential treatment in the plaintiff's petition for reinstatement. Even if the files were relevant, they would be primarily cumulative in light of the amount of other evidence, including court files of alleged instances of misconduct on the part of various Minnesota attorneys. The files would be only remotely relevant to the claim of invidious intent to discriminate against the plaintiff.

Thus, in light of the untimeliness of the subpoena, the importance the state has accorded the privilege, the ability of the plaintiff to obtain substantially the same information by alternative means, and the attenuated relevance of the requested documents, the Court sustained the motion to quash the subpoena duces tecum.

■ *Subpoena ad testificandum.* The subpoena of Minnesota Supreme Court Chief Justice Robert J. Sheran was also quashed. The plaintiff may not inquire into the thought processes of a judicial officer, and thus may not interrogate the chief justice as to the reasons for the Minnesota Supreme Court's decision to deny reinstatement of Peterson's license to practice law. No reason has been advanced that would justify the disruption in comity between state and federal judicial systems, and the likely chilling effect on the independence of judicial decisionmaking that would certainly result. The plaintiff has shown no "extraordinary circumstance" that would require the testimony of the chief justice. *See United States v. Dowdy,* 440 F.Supp. 894, 896 (W.D.Va.1977). The plaintiff has argued that the Minnesota Supreme Court acts in an administrative capacity in disciplinary proceedings. *But see Grossgold v. Supreme Court,* 557 F.2d 122, 125 (7th Cir. 1977) (holding that disciplinary proceedings by a state supreme court are judicial). Even assuming that the Minnesota Supreme Court did act in an administrative capacity, the findings and conclusions are clearly adjudicative in nature and an administrative decisionmaker is entitled to protection from intrusion into his or her thought processes absent "a strong showing of bad faith or improper motive." *Citizens*

*to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *see United States v. Morgan,* 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). No such showing has been made. The Court can only rely on the bare allegations in the plaintiff's complaint, which are certainly not sufficient to allow intrusion into the thought processes of an administrative decisionmaker. A much stronger showing would presumably be required to examine the thought processes of a judge, if such examination would be allowed at all.

 The plaintiff indicates that he also intended to call the chief justice in order to inquire into the chief justice's conduct as a private attorney before his selection to the Supreme Bench. Yet the plaintiff failed to establish any substantial connection of the chief justice to the case in which the plaintiff has alleged attorney misconduct, and even if such a connection had been established, the evidence plaintiff seeks to introduce would have little if any probative value with respect to plaintiff's claim of invidious intent to discriminate against him. In addition, such information would be cumulative in view of the evidence relating to the conduct of other attorneys introduced into the record by plaintiff. Thus, Chief Justice Sheran's testimony in this regard would be subject to exclusion on evidentiary grounds.[2]

## II. FACTS

The Court sustained the defendants' motion to dismiss as to the First Amendment and due process issues. The motion was denied as to the equal protection claim. The subpoenas issued at the plaintiff's request were quashed. The Court thus limited the trial to the issue of the alleged equal protection violation, and will now enter its findings of fact and conclusions of law pursuant to Rule 52(a), F.R.Civ.P.

To briefly summarize the background of the case set forth above, the plaintiff was disbarred in 1961 for "reprehensible" conduct and has filed four petitions for reinstatement. One such petition was withdrawn in 1965, and three petitions have been denied.

The latest petition for reinstatement was filed August 7, 1974. The Minnesota Supreme Court denied the petition on March 29, 1976, but upon request of the plaintiff agreed to a hearing *en banc* in May of 1976. The rehearing was rescheduled to November of 1976 because of plaintiff's illness. The members of the Minnesota Supreme Court were served with this federal lawsuit just prior to the hearing date, so that the rehearing was postponed pending the outcome of this litigation. This Court (per Judge Miles W. Lord) subsequently stayed the federal lawsuit pending the outcome of the state court proceedings.

Rule 18 of the Minnesota Rules of Professional Responsibility sets forth the procedures for reinstatement.[3] It provides that after a petition for reinstatement is filed, the Director of the Lawyers Professional

---

2. The Court, at trial, also quashed a subpoena ad testificandum for testimony by Edward Fride, a private attorney. The plaintiff alleged that Mr. Fride was guilty of misconduct but was not disciplined by the Minnesota Supreme Court. That subpoena, issued the day of trial, was untimely; the Court was not informed that Mr. Fride would be a witness on plaintiff's witness list; and the Court accepted into evidence a published opinion containing the information the plaintiff planned to elicit in testimony.

3. Rule 18 provides as follows:

 REINSTATEMENT

 (a) Petition for reinstatement. A suspended, disbarred, or resigned lawyer's petition for reinstatement to practice law shall be served upon the Director and the president of the State Bar Association. The original petition, with proof of service, and one copy, shall then be filed with this Court.

 (b) Investigation; report. The Director shall investigate and report his conclusions to a Panel.

 (c) Recommendation. The Panel may conduct a hearing and shall make its recommendation. The recommendation shall be served upon the petitioner and filed in this Court.

 (d) Hearing before Court. There shall be a hearing before this Court on the petition unless otherwise ordered by this Court. This Court may appoint a referee. If a referee is appointed, the same procedure shall be followed as under Rule 14.

Responsibility Board "shall investigate and report his conclusions to a Panel." The panel, in turn, "may conduct a hearing and shall make its recommendation" to the state supreme court. Finally, the Minnesota Supreme Court "may appoint a referee." [4]

From the time that the plaintiff Peterson filed his petition for reinstatement in 1974 to the time that his petition was finally denied in 1979, he received three evidentiary hearings: by the Hennepin County District Ethics Committee on August 23, 1974; by the Administrator of the Lawyers Professional Responsibility Board on December 31, 1974; and by a referee appointed by the Minnesota Supreme Court, at the request of plaintiff Peterson, on April 12–13, 1978. The hearing officer at each hearing recommended denial of the petition for reinstatement.

While the Minnesota rules provide for various sanctions ranging from temporary suspension to permanent disbarment, the former director of the Lawyers Professional Responsibility Board, R. Walter Bachman, testified that it is a long-standing policy in Minnesota to have fewer disbarments than suspensions, and to have an even smaller number of reinstatements. In fact, Mr. Bachman testified that there were but three petitions for reinstatement in a period from 1971 to 1978, one of which was granted.

It is within the discretion of the Lawyers Professional Responsibility Board to recommend appropriate sanctions to the Minnesota Supreme Court, or to recommend the granting or denial of a petition for reinstatement to the Minnesota Supreme Court. In considering whether to recommend denial of a petition for reinstatement, Mr. Bachman testified that the Lawyers Professional Responsibility Board considers many fac-

tors, including decisions in other cases, the seriousness of the offenses, the presence of any aggravating or mitigating circumstances, whether any fiduciary relationships have been breached in the petitioner's past, whether the offense precipitating disbarment involved dishonesty, or whether there is evidence of misuse of court process or misuse of funds. This testimony was not rebutted. Mr. Bachman further testified that, as director of the Lawyers Professional Responsibility Board, his recommendation to deny the plaintiff's petition for reinstatement was based solely on his investigation of the plaintiff, and further testified that he held no ill feelings toward the plaintiff.

The plaintiff alleged in his testimony that many persons, and particularly "the Minnesota Bar," hold ill feelings toward him, and that the denial of his petition for reinstatement was based on these ill feelings. He presented no evidence of such invidious intent, except by innuendo not rising to the dignity of a reasonable inference.[5] Nor did he show any reliable connection between the defendants and the alleged animosity of the Bar. His testimony was on a level of generality that simply would not support a finding that plaintiff had been intentionally discriminated against.

### III. CONCLUSIONS

The plaintiff has never alleged that he is a member of any protected class; rather, he has alleged that the defendants have discriminated against him by refusing to reinstate his license to practice law, and that he has received treatment different from that received by similarly situated individuals. The plaintiff claims that this allegedly dif-

4. These rules took effect January 1, 1977, after the commencement but before the conclusion of the plaintiff's petition for reinstatement. The procedures prior to that date provided for greater local bar association participation in the hearing process.

5. For example, the plaintiff testified that when he served in the Minnesota legislature in the 1940s he advocated a policy of naming lay

persons to several Minnesota Bar Association boards, and further advocated an increase in the number of persons granted licenses to practice law in Minnesota. He alleged that these views rendered him a "marked man" in the eyes of "the Minnesota Bar." His proposed changes were subsequently implemented by the Minnesota Bar Association and the Minnesota Board of Law Examiners.

ferential treatment constitutes a violation of the equal protection clause.

■ The plaintiff's claim is closely analogous to a charge that criminal laws have been discriminatorily enforced. *See United States v. Scott,* 521 F.2d 1188, 1195 (9th Cir. 1975); *United States v. Alarik,* 439 F.2d 1349, 1350 (8th Cir. 1971); *United States v. Sacco,* 428 F.2d 264, 271 (9th Cir. 1970); *Moss v. Hornig,* 314 F.2d 89, 91 (2d Cir. 1963). In discriminatory enforcement cases, the burden rests with the plaintiff to prove that the enforcement is discriminatory, and that it is based on an invidious intent to discriminate against the particular plaintiff. Disbarment has been held to be a quasi-criminal proceeding, *In re Ruffalo,* 390 U.S. 544, 551, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968), so that criminal discriminatory enforcement cases cited above would be analogous. Courts have applied the same standard even when no criminal sanctions were involved. *See Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *Delia v. Court of Common Pleas of Cuyahoga County,* 418 F.2d 205, *cert. denied,* 396 U.S. 886, 90 S.Ct. 174, 24 L.Ed.2d 161 (1969).

In order to establish an equal protection violation under the circumstances, the plaintiff must show that other persons who petitioned for reinstatement were treated differently and that this different treatment was a result of the defendants' invidious intent to discriminate against the plaintiff. He has wholly failed to carry the burden on either element.

The plaintiff has presented meager evidence that his petition for reinstatement was treated differently than other petitions for reinstatement. The Minnesota state policy has been and continues to be to have few disbarments and even fewer reinstatements. Mr. Bachman testified that disbarment is the most severe disciplinary sanction in Minnesota, and is considered the permanent removal of an attorney from the practice of law. The Minnesota Supreme Court has said:

> While a court should be slow to disbar . . ., it should be even more cautious in readmitting an attorney to a position of trust. . . . Stronger proof of good moral character and trustworthiness should be required than in an original admission. . . . It must be sufficient to overcome the court's former adverse judgment of applicant's character.

*In re Smith,* 220 Minn. 197, 200, 19 N.W.2d 324, 326 (1945). Mr. Bachman testified that from 1971 to 1978 only three petitions for reinstatement were filed. Of those three, only one petition for reinstatement was granted, on what might be termed humanitarian grounds, and with the stipulation that the reinstated attorney would not practice law.[6]

■ The plaintiff has introduced evidence purporting to show moral and ethical transgressions by other Minnesota attorneys and has alleged that worse conduct by other attorneys has resulted in less severe discipline than in his case. This Court, of course, is not the forum to collaterally attack the 1961 disbarment. The present inquiry is focused on plaintiff's attempt to gain reinstatement. In this regard, the Minnesota Supreme Court has established factors to consider in all disciplinary proceedings. *See In re Application of Strand,* 259 Minn. 379, 107 N.W.2d 518 (1961); *In re DeVinney,* 255 N.W.2d 832 (1977); *In re Raskin,* 307 Minn. 233, 239 N.W.2d 459 (1976). Mr. Bachman testified that the Lawyers Professional Responsibility Board, in recommending either disbarment or reinstatement, uses the same criteria. The major difference between an action for disbarment and an action for reinstatement is not the criteria by which the petitioner is judged, but rather it is the differing bur-

---

**6.** The license was reinstated to a 71-year-old man who had been disbarred after failing to report for induction in 1943 because of his religious convictions. The man later received a full pardon from the President of the United States, and served as a missionary for most of the years since his release from prison. He had not actively practiced law, and petitioned for reinstatement on retired status, which means he would not actually practice law once his license was reinstated. *See In re Lindquist,* 246 N.W.2d 35 (1976).

dens of proof. In a disbarment proceeding the burden is on the disciplinary board to show that the attorney should be disbarred. In the reinstatement proceeding, however, the burden is on the applicant to show

> by clear and satisfactory evidence either that the court erred in its original judgment of disbarment or that applicant has undergone such a moral change as to now render him a fit person to enjoy the public confidence and trust once forfeited.

*In re Smith,* 220 Minn. 197, 200, 19 N.W.2d 324, 326 (1945).

In the final analysis, the plaintiff's cumulative evidence shows at the most that he is not as bad as others who have been less severely punished, an exercise of judgment not for this Court to make and certainly not amounting to a violation of equal protection.

While the Court is not insensitive to the plaintiff's plea to be reinstated to practice law once again, it is not within the purview of a federal district court to review the merits of a state disciplinary proceeding or to substitute its judgment for that of the Minnesota Supreme Court. This Court's review is necessarily limited to the plaintiff's equal protection claim, and the plaintiff has presented no evidence by which this Court could find that the plaintiff's petition for reinstatement was discriminatorily denied, nor can the Court impute an invidious intent to any of the named defendants. Inasmuch as the plaintiff has failed to carry the burden of proof, his prayer for relief must be denied.

### ORDER FOR JUDGMENT

For the foregoing reasons,

IT IS HEREBY ORDERED that plaintiff's prayer for injunctive and declaratory relief is denied, and the Clerk shall enter judgment dismissing the complaint.