**In the Matter of the Application for the DISCIPLINE OF Ellis OLKON, an Attorney at Law of the State of Minnesota, Appellant.**

No. 85–5140.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 13, 1985.

Decided July 8, 1986.

Theodore J. Collins, St. Paul, Minn., for appellant.

Jon M. Hopeman, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before ROSS, Circuit Judge, BRIGHT, Senior Circuit Judge, and BOWMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Attorney Ellis Olkon appeals a district court[1] order denying his petition for reinstatement to practice before the federal bench and restricting his right to apply for reinstatement in the future. On appeal, Olkon contends, *inter alia,* that the district court erred in finding that he failed to prove sufficient rehabilitation to practice. Olkon also contests the district court's reliance on a report by the United States Attorney's Office, recommending denial of the readmission petition, without a full hearing. Olkon asserts that the United States Attorney based the report on unsubstantiated hearsay, including secret grand jury materials unavailable to Olkon, and that the United States Attorney was biased against Olkon. For the reasons set forth below, we affirm with a modification relating to Olkon's privilege to reapply for reinstatement to practice in the federal courts.

## I. BACKGROUND.

On September 20, 1979, the Hennepin County District Court convicted attorney Ellis Olkon of two counts of attempted theft, sentenced him to five years of probation, and imposed a $10,000 fine. The court found that Olkon had attempted to defraud two insurance companies by presenting personal injury claims of a client whom Olkon knew was not injured. *State v. Olkon,* 299 N.W.2d 89 (Minn.1980), *cert. denied,* 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981). As a result of his conviction, the Minnesota Supreme Court temporarily suspended Olkon from practice before the state bar on March 30, 1980. *In re Petition for Disciplinary Action Against Ellis Olkon,* 324 N.W.2d 192 (Minn.1982). The Minnesota Supreme Court allowed Olkon automatic reinstatement to the practice of law, without further investigation, upon completion of his criminal probation. *Id.* at 196.[2]

On May 12, 1980, the United States District Court for the District of Minnesota indefinitely suspended Olkon from practice in federal court pursuant to District of Minnesota Rule of Practice 1.F.1 which provides in pertinent part: "Any member of the bar of this court who has been suspended or disbarred from the bar of the State of Minnesota * * * shall * * * be suspended from practice before this court."

From 1980 until June of 1984, two grand juries investigated the activities of one of Olkon's former clients, Robert Daniel Bahler, who ran an out-call massage service suspected to be a front for a prostitution ring. Because a member of the United States Attorney's Office in the District of Minnesota admitted patronizing the "massage" service, the United States Attorney's Office for the District of Minnesota did not participate in the investigation of this matter. The investigation led to Bahler's arrest and thereafter, he began to actively cooperate with the FBI. At the close of the investigation the government sought no indictments on the basis of the grand juries' findings.

After Olkon served his criminal probation, the Minnesota Supreme Court readmitted him to practice before the state bar without further investigation. *In re Petition for Disciplinary Action Against Ellis Olkon,* 345 N.W.2d 247 (Minn.1984). On March 8, 1984, Olkon petitioned for

---

1. The Honorable Robert G. Renner and the Honorable Paul A. Magnuson, United States District Judges for the District of Minnesota. The district court opinion is reported as *Petition of Olkon,* 605 F.Supp. 784 (D.Minn.1985).

2. The Minnesota Supreme Court appointed Judge Zimmerman to make findings and recommendations as to Olkon's discipline. Judge Zimmerman conducted a hearing into the matter and submitted his findings to the Minnesota Supreme Court. Those findings are not a part of the record before this court.

readmission to the federal bar. In support of his petition, Olkon submitted affidavits of attorneys Steven Goldfarb and Nancy Olkon (Olkon's wife) attesting to Olkon's legal abilities, good character, and general reputation as a honest, law-abiding citizen.

District of Minnesota Rule of Practice 1.G.1 provides in part: "The United States Attorney shall investigate the facts alleged in the petition for reinstatement and shall present to the court * * * any facts in support of or against the granting of the said petition." Pursuant to this rule, the United States Attorney's Office for the District of Minnesota conducted an investigation of Olkon's character and fitness for readmission to the federal bar. The United States Attorney's Office submitted to the court a report based upon FBI reports, transcripts of wiretap conversations, personal interviews, and material relating to the grand juries' investigation of Olkon's former client, Bahler. The United States Attorney's Office requested and received from the court two continuances of the deadline for this report.

In its report, the United States Attorney's Office recommended denial of Olkon's petition for readmission based on evidence of unethical conduct unrelated to Olkon's conviction. The report alleged, *inter alia,* that Olkon: knowingly advised clients how to avoid arrest for prostitution; knowingly referred women clients, who were unable to pay his fee, to work for a massage/prostitution service; and practiced law after his suspension from the state and federal bars. Olkon submitted a response to the United States Attorney's report, denying the derogatory allegations and explaining his conduct.

At a hearing conducted by the district court on December 12, 1984, Olkon made a motion to strike the United States Attorney's report on grounds that: (1) he had no access to the grand juries' materials on which the United States Attorney relied; (2) the United States Attorney's Office, in bad faith, delayed in filing the report and releasing a copy to Olkon; and (3) the United States Attorney's Office had a con-

flict of interest and a bias against Olkon due to the public disclosure that a member of the office had patronized Bahler's massage/prostitution services. The district court denied Olkon's motion to strike and offered him the opportunity of a continuance and a full hearing of the matter. The court noted that if Olkon opted for a hearing, discovery would be available but would not necessarily include access to the grand juries' materials. Olkon waived the offer of a continuance and a future hearing, and asked the court to consider the petition on the record before it. Olkon testified that he was of good moral character and guilty of no crimes, and presented no other witnesses.

Concluding that Olkon failed to establish sufficient rehabilitation to practice in federal court, the district court denied Olkon's petition for reinstatement. *Petition of Olkon,* 605 F.Supp. 784 (D.Minn.1985). In addition, the district court denied Olkon the right to reapply for readmission to the federal bar for four years. *Id.* at 792. Subsequently, the district court denied Olkon's motion to reconsider. This appeal followed.

## II. DISCUSSION.

Olkon contests the district court's disciplinary order on a number of grounds. In considering Olkon's claims, we must first consider the fairness of the disciplinary proceedings. *See In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1225–26, 20 L.Ed.2d 117 (1968); *In re Rhodes,* 370 F.2d 411, 413 (8th Cir.), *cert. denied,* 386 U.S. 999, 87 S.Ct. 1321, 18 L.Ed.2d 349 (1967). We then determine whether substantial evidence supports the district court's findings. *See Hertz v. United States,* 18 F.2d 52, 57 (8th Cir.1927). Finally, we review the terms of the disciplinary order for abuse of discretion. *Standing Committee on Discipline of the United States District Court for the Southern District of California v. Ross,* 735 F.2d 1168, 1172–73 (9th Cir.1984) (citations omitted).

### A.  Olkon's Due Process Claim.

█ Olkon contends that the basic issue before this court is whether the district court afforded him due process in considering his petition for readmission to federal practice.  Olkon raises two major allegations as to this issue.  First, Olkon argues that the district court erred in not granting his motion to strike the report of the United States Attorney's Office because the report was prepared in bad faith and was the product of bias against Olkon.  Essentially, Olkon asserts that the United States Attorney's Office delayed in submitting its report to the district court in order to obtain unfavorable evidence against him from secret grand juries' materials unavailable to Olkon.  The investigation of Olkon's former client, Bahler, caused the United States Attorney's Office great embarrassment because a member of the office admitted patronizing Bahler's allegedly illegal operations.  Due to a possible conflict of interest stemming from this situation, the United States Attorney's Office recused itself from the investigation of Bahler's activities.  Consequently, Olkon asserts, the United States Attorney's Office had a similar conflict of interest in investigating his character and fitness to practice before the federal bench.  Olkon further contends that the United States Attorney's Office failed to conduct a complete investigation, and that the delay in preparation as well as the evidence in the report demonstrate the United States Attorney's Office bias against him.

We reject this contention because Olkon failed to demonstrate to this court or the district court the existence of a conflict of interest or bias on the part of the United States Attorney's Office.  In preparing the report, the United States Attorney's Office merely performed its duty under Local Rule 1.G.1 to investigate and report any facts in support of or against Olkon's reinstatement to practice.  Furthermore, prior to seeing the report, Olkon raised no objection to the United States Attorney's role in preparing it.

After carefully reviewing the report, we conclude that it contains no improper bias against Olkon.  The information in the report weighs heavily against Olkon's petition for readmission, but the United States Attorney's Office clearly did not manufacture the evidence.  Moreover, had the report reflected any bias or conflict of interest, the district court was fully capable of recognizing and rectifying the situation.  In fact, the district court found that Olkon successfully rebutted more than half of the allegations of improper conduct.  In light of its opinion, we believe the district court properly evaluated the report of the United States Attorney's Office and properly denied Olkon's motion to strike.

█ Olkon also claims that the district court denied him due process in basing the decision to deny his petition on unsubstantiated hearsay and secret grand juries' materials contained in the United States Attorney's report.  Olkon asserts, *inter alia,* that he had a right to assume that the district court would not rely on material contained in the report without affording him a hearing and an opportunity for cross-examination.  Further, Olkon submits that he did not waive his right to a hearing, in part, because the district court would not guarantee him access to the secret grand juries' materials used by the United States Attorney's Office in preparing its report.  We disagree.

During the hearing of this matter, the district court repeatedly offered to hold a full evidentiary hearing calling witnesses, who testified before the grand juries, to give testimony under oath with a full opportunity for cross-examination.  In connection with this offer, the district court indicated that discovery of some sort would be available to Olkon, but questioned whether Olkon would have a right to explore all the secret grand juries' materials.  Olkon responded that he did not believe a full hearing necessary and indicated that he wanted the matter submitted on the record before the court, which included the United States Attorney's report.  After the court advised Olkon and his attorney that it

would deny the motion to strike, it specifically inquired: "in light of the Court's ruling, what is your desire as to a continuance? * * * [D]o you want to go based on your client's testimony and submissions, or is it your request that the matter be continued for future hearing?" Olkon's attorney responded: "My client would like it submitted on the present record." In light of this colloquy, we believe Olkon waived his right to a full hearing. Moreover, we are unpersuaded that an attorney of Olkon's experience, who had retained counsel to represent him, had any right to assume that the district court would not consider or rely on evidence presented in the United States Attorney's report. As Olkon waived the right to a full hearing, and the district court fairly evaluated the evidence before it, we believe the district court afforded him ample due process.

### B. District Court Scope of Review.

█ To obtain reinstatement, the district court required Olkon to show his rehabilitation and fitness to practice. To carry this burden, Olkon needed to demonstrate his "strict adherence to the ethical rules" as well as "stronger proof of good moral character and trustworthiness than that required in an original admission to the bar." *Petition of Olkon,* 605 F.Supp. at 788 (citing *Peterson v. Sheran,* 474 F.Supp. 1215, 1224 (D.Minn.1979), *aff'd in part, vacated in part on other grounds,* 635 F.2d 1335 (8th Cir.1980)). In addition, the district court noted that in the proceedings seeking reinstatement "failure to be truthful would support a conclusion that the applicant has not been sufficiently rehabilitated to deserve reinstatement as a member of the bar." *Petition of Olkon,* 605 F.Supp. at 788 (citing *In re Braverman,* 549 F.2d 913, 916 (4th Cir.1976)).

Citing *In re Abrams,* 521 F.2d 1094 (3d Cir.), *cert. denied,* 423 U.S. 1038, 96 S.Ct.

574, 46 L.Ed.2d 413 (1975), Olkon asserts that the district court should have applied the same legal standard as the state court in considering his petition for reinstatement. Olkon argues that because the district court based its original suspension on the state's disciplinary action without an independent review, it could not then look beyond the events triggering the state court suspension in deciding whether to reinstate him. Olkon submits that the district court erred in considering any evidence unrelated to the felony conviction which prompted his suspension from state and federal practice.

As previously noted, Local Rule 1.G.1 requires the district court to conduct an independent investigation and to consider "any facts in support of or against" the petition for reinstatement. The rule in no way circumscribes the facts to be considered. In addition, the Supreme Court has recognized that federal district courts have power independent of state courts to discipline attorneys admitted to practice before the federal bench. *See In re Ruffalo,* 390 U.S. at 547, 88 S.Ct. at 1224; *Theard v. United States,* 354 U.S. 278, 281–82, 77 S.Ct. 1274, 1276–77, 1 L.Ed.2d 1342 (1957); *Selling v. Radford,* 243 U.S. 46, 50–51, 37 S.Ct. 377, 379, 61 L.Ed. 585 (1917).[3] Thus, the district court had the authority to consider any evidence relevant to the petition for reinstatement. Moreover, the *Abrams* decision, on which Olkon chiefly relies, does not compel a different conclusion.

In *Abrams,* the state supreme court conducted a disciplinary proceeding which resulted in a one-year suspension from practice. Based only on the record of the state court's disciplinary proceedings, the district court disbarred Abrams. On appeal, the Third Circuit reasoned that the "absolute and unfettered power of the district court to discipline lawyers may be circumscribed to the extent the district court, in imposing

---

**3.** We recognize that these Supreme Court cases stand for the proposition that "disbarment by federal courts does not automatically flow from disbarment by state courts." *Theard,* 354 U.S. at 282, 77 S.Ct. at 1276. However, if the federal court has the power not to follow a state court disciplinary action, by implication, the federal

court must also be capable of imposing a more severe discipline than that imposed by the state. This is especially true where, as here, the district court did not rely on the state court's record but conducted an independent investigation into the matter.

its disciplinary sanctions, relies upon a state's legal or factual determinations." *Abrams*, 521 F.2d at 1101. However, in *Abrams*, the district court conducted no investigation of its own and relied exclusively on the record of the state's disciplinary proceedings in determining Abrams' discipline. In addition, in deciding to disbar Abrams, the district court: (1) relied on a state case, specifically distinguished by the state court, rather than on a controlling case cited in the state disciplinary decision; (2) considered a charge which had been withdrawn by the state; and (3) failed to follow its own rules for the conduct of disciplinary proceedings. In view of these errors, the Third Circuit reversed the district court's decision to disbar Abrams.

The facts underlying the *Abrams* decision are inapposite to Olkon's situation. Here, the district court properly followed the local rules and, through the United States Attorney's Office, conducted an independent investigation of Olkon's character and fitness to practice. After considering the results of that investigation and Olkon's response to it, the district court decided, not to disbar, but to continue Olkon's suspension. We are therefore unpersuaded that the district court exceeded its proper scope of review.

### C. Sufficiency of the Evidence.

■ Olkon also contends that the district court erred in denying his motion for reconsideration or for a hearing en banc. Essentially, Olkon asserts that the district court based its disciplinary decision on false information and/or erroneous conclusions.

Olkon submits that the district court erroneously concluded that Olkon knew his client Bahler ran a prostitution business, and that Olkon demonstrated a reluctance to be truthful [4] by denying knowledge of the illegality of Bahler's business. In addition, Olkon argues that the district court erred in concluding that he counseled or assisted clients in conducting illegal activities in violation of ABA Code of Professional Responsibility D.R. 7–102(A)(7); or ABA Model Rule of Professional Conduct 1.2(d).[5]

We will not overturn the district court's findings of fact unless clearly erroneous. *Ross*, 735 F.2d at 1170. After carefully reviewing the record, we are convinced that sufficient, but not overwhelming, evidence supports the district court's conclusions that: (1) Olkon knew that Bahler operated a prostitution business but denied this knowledge to the district court in his response; and (2) Olkon counseled clients to engage in illegal conduct by referring women to work in prostitution businesses to earn money to pay his attorney's fees. The district court details the evidence supporting these conclusions in its opinion, 605 F.Supp. at 788–91. In light of this evidence, the district court properly concluded that Olkon failed to demonstrate sufficient rehabilitation to deserve reinstatement. Accordingly, we believe the district court properly denied Olkon's petition for reinstatement and his motions for reconsideration or rehearing en banc.

### D. Propriety of Penalty.

■ Finally, we turn to the penalty imposed by the district court. We review the terms of the disciplinary order for abuse of discretion. *Ross*, 735 F.2d at 1172–73. Although we believe sufficient evidence existed to support the district court's decision to

---

4. Olkon also argues that the district court misjudged the truthfulness of his testimony at the hearing. When asked by his attorney whether he was guilty of any crimes, Olkon responded "no." In its opinion, noting that Olkon made no exception for his felony conviction, the district court concluded that "this could well indicate that he was neither remorseful nor repentent and does not acknowledge his previous wrongdoing." *In re Olkon*, 605 F.Supp. at 787. Olkon asserts that he directed this response only to the allegations contained in the United States Attorney's report. Although this may be a plausible explanation of Olkon's intention, we do not be-

lieve the district court erred in concluding that Olkon appeared to lack remorse for the actions underlying his felony conviction.

5. D.R. 7–102(A)(7) provides: "(A) In his representation of a client, a lawyer shall not: * * * (7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent." Model Rule 1.2(d) provides, in part: "A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal * * *."

continue Olkon's suspension, we question whether the evidence required continuing the suspension for four years. We note that much of the evidence against Olkon predates the felony conviction which triggered his original suspension. In light of his successful discharge from criminal probation, and his subsequent reinstatement to practice before the state bar, we believe that Olkon deserves the opportunity to reapply for readmission sooner than four years from the district court's denial order of March 27, 1985. In this regard, we note the delay of about one year between Olkon's petition for reinstatement and the denial order. We remand so that the district court may reduce the application time for Olkon to some period less than four years, that period at the district court's discretion. Of course, upon reapplication Olkon will still be required to demonstrate to the district court evidence of sufficient rehabilitation to practice before the federal bench.

## III. CONCLUSION.

Affirmed and remanded.