519 N.W.2d 900 (1994)
In re Petition for Disciplinary Action against John E. MACK, an Attorney at Law of the State of Minnesota.
No. CX-90-2713.
Supreme Court of Minnesota.
August 5, 1994.
Marcia A. Johnson, Director, Lawyers Professional Responsibility Board, Patrick R. Burns, Sr. Asst. Director, St. Paul, for petitioner.
Ronald H. Schneider, Willmar, for respondent.
Heard, considered, and decided by the court en banc.

OPINION
PER CURIAM.
On October 23, 1991, this court accepted a stipulation for discipline negotiated as a result of disciplinary proceedings instituted by the Lawyers Professional Responsibility Board, against John E. Mack. Based on the stipulation, the referee found that Mack had misappropriated clients' funds from his trust account, improperly permitted an employee and an associate who were not attorneys to withdraw funds from the trust account and to sign trust account checks, deposited personal funds into the trust account to avoid paying past due withholding taxes, failed to pay to the Lawyers Trust Account Board the interest on his trust account, failed to keep proper trust account books and records but falsely certified to the Minnesota Supreme Court that he did, falsely reported his secretary's salary to the Internal Revenue Service and the Minnesota Department of Revenue, and, finally, that Mack had knowingly served a client's false answer to an interrogatory. We adopted the referee's recommendation for discipline and suspended Mack, effective November 15, 1991, without eligibility for reinstatement for a period of 21 months.
Mack was still suspended from the practice of law when, on October 6, 1993, the director of the LPRB filed another petition for disciplinary action against Mack. This petition alleged that after learning that his client had testified falsely in a deposition, Mack failed to take reasonable remedial measures or to disclose the falsity of the evidence to either the opposing party or the court. After a hearing, the referee found that Mack had not taken reasonable remedial measures, and he concluded that that failure, coupled with Mack's conceded failure to disclose the perjury, violated Rules 1.2(c) (assisting criminal or fraudulent conduct), 3.3(a)(2) (failure to make disclosure necessary to avoid assisting criminal or fraudulent act), 3.3(a)(4) (failure to take reasonable remedial measures to avoid fraud on the court), 8.4(c) (engaging in *901 conduct involving dishonesty, fraud, deceit or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice), Minnesota Rules of Professional Conduct. We adopt the referee's recommendation that Mack's suspension continue with no right to petition for reinstatement until July 23, 1995.
In August 1990, one K.G. retained Mack to bring a declaratory action against State Farm Mutual Automobile Insurance Company. K.G.'s daughter was involved in an accident on July 21, 1990 while she was driving one of the G. family's automobiles. The daughter and two others were seriously injured in the accident, and a 4-year-old child was killed. When notified of the accident, State Farm denied coverage because of non-payment of the premium due on June 15, 1990. Early in September 1990 Mack commenced a declaratory action alleging timely payment of the premium and further alleging that State Farm had not properly cancelled the policy. Attached to the complaint were a renewal premium notice bearing the handwritten notation "Pd. 6/13/90 ck # 8440" and a cancelled check numbered 8440 in favor of State Farm in the amount of $228.82, dated June 13, 1990 but not charged against the drawer's account until July 31, 1990.
It is the client's assertion that check No. 8440 was written and mailed on June 13, 1990 which forms the basis for the present disciplinary proceeding. When State Farm deposed K.G. on October 17, 1990, K.G. falsely testified under oath that her brother-in-law had mailed check No. 8440 to State Farm on June 13, 1990. K.G. also testified that she had made the notation on the premium notice to remind herself that the premium was paid by check No. 8440, and she remarked that she had noted vehicle and policy numbers on the check to identify the payment. K.G. stated that the family does not maintain an accurate check register or even write checks in sequence: they "just take checks and write them." Used registers are thrown away. In response to a direct question, K.G. stated that the premium check had not been mailed after the accident.
In May or June of 1991, during the pendency of the disciplinary proceeding which resulted in the October 23, 1991 order for suspension, K.G. told Mack that she had not been truthful in her deposition. K.G. admitted to Mack that she had not mailed check No. 8440 in June and that she had written the check out a few days after the accident and left it in an inconspicuous spot in the post office. Apparently, she anticipated that the check would be found and the blame for late delivery could be put on the postal service. K.G. also told Mack that she wrote check No. 8440 to replace a check which had been mailed on June 13 but which had been lost.
Mack testified that he advised his client that if she testified at trial of the action, she should reveal her deception but that she could continue the lawsuit and simply "rely on her right to remain silent." K.G. stated, however, that Mack did not tell her to reveal the falsity of her deposition testimony, and the referee found that Mack neither advised his client to disclose her misrepresentation nor disclosed it himself to either the court or the adversary.
About 6 months later, when Mack's suspension began, the declaratory action was still proceeding on two theories: One was the false claim that the premium had been timely paid; the other was that the policy had not been properly cancelled. Mack turned the file over to Richard Clem for trial. The two lawyers discussed the false testimony and agreed that the falsity should be revealed on direct examination at trial. Instead, Clem reiterated the claim of timely payment in his opening statement, and on direct examination K.G. reasserted her false claim that the premium had been paid on June 13, 1990.
It was not until K.G. was cross-examined that she admitted that she did not write check No. 8440 until 2 days after the accident, that she put it in an envelope and hid it in the post office. She maintained, however, that a check in the amount of $396.68[1] had *902 been mailed on June 13, 1990, but that check was lost and she could not produce a check register in which such a check was noted until the trial of the action. K.G. claimed that Mack's secretary had told her that she need not keep the register. She also stated that Mack did not advise her that she must disclose her falsehood.
At the close of trial the jury found that State Farm had effectively cancelled the policy prior to the accident. K.G. was then charged with perjury, but after several witnesses had testified, among them the lawyer who had represented State Farm in the declaratory action, the prosecutor moved for dismissal, saying that it was plain that shortly after her deposition had been taken, K.G. "had tried to set the record straight with John Mack [but] was thwarted * * * in her attempts to set up a meeting [with State Farm's lawyer]."
Throughout this current proceeding Mack has defended his conduct on the ground that the attorney-client privilege precludes disclosure of the falsity of the client's testimony. It is true, of course, that a lawyer is generally required to protect the client's confidences and secrets, Rule 1.6(a), Minn.R.Prof.Conduct, but the rule which imposes the obligation of confidentiality also provides for disclosure of confidences when necessary to rectify the client's use of the lawyer's services to further fraudulent conduct, Rule 1.6(b), (Minn.R.Prof.Conduct. Furthermore, Rule 3.3, Minn.R.Prof.Conduct, directly imposes a duty to disclose or take reasonable remedial action under circumstances described in Rule 3.3(a) even if compliance requires disclosure of information otherwise protected by Rule 1.6.
Not only did Mack's silence in the face of his client's perjury violate Rule 3.3, but it was deceitful and prejudicial to the administration of justice in violation of Rule 8.4, Minn.R.Prof.Conduct. Had K.G. not broken down on cross-examination during the trial, her lie probably would never have been revealed. Hence, Mack's silence was tantamount to acquiescence to the deception. Similar conduct was held to justify criminal conviction of violation of Minn.Stat. § 481.071 (1993) despite the lawyer's argument that her duty to the client prevented the disclosure of his deception:
When she learned her client was perpetrating a fraud on the judicial system, she had a duty * * * "to advise against the continuation of such action, and if the client persisted, attempt to withdraw from the case." * * * * Indeed, in the circumstances, it is difficult to see how Ms. Casby could have continued to represent [her client], even under the most passive conditions, without the danger of assisting the client's fraudulent conduct and preserving false evidence in violation of DR 7-102(A).
State v. Casby, 348 N.W.2d 736, 739 (Minn. 1984).
Mack also complains of the referee's denial of his request for a subpoena for the production of LPRB records and dispositions. The referee's rejection of the request was neither novel nor an abuse of discretion. We rejected a similar request in In re Williams, 414 N.W.2d 394 (Minn.1987), and the federal district court quashed a subpoena of LPRB records in Peterson v. Sheran, 474 F.Supp. 1215 (D.Minn.1979), vacated in part on other grounds, 635 F.2d 1335 (8th Cir. 1980).
We have carefully reviewed Mack's objection to the composition of the LPRB screening panel and his claim of discriminatory or vindictive prosecution and find them meritless.
Finally, Mack contends that the referee's recommendation is "excessive and unconscionable." It is neither. At the time Mack was informed of his client's deception he was embroiled in disciplinary proceedings which ultimately resulted in his suspension effective November 15, 1991. One of several serious charges of misconduct in the original disciplinary proceeding was knowingly submitting a client's false answer to an interrogatory. In re Mack, 476 N.W.2d 893 (Minn.1991). Mack's misconduct with respect to K.G.'s false testimony hardly bespeaks a "renewed commitment to comprehensive ethical and professional behavior." In re Hunter, 473 N.W.2d 866, 869 (Minn.1991). Because "false testimony strikes at the very heart of the administration of justice," In re Salmen, 484 *903 N.W.2d 253, 254 (Minn.1992), and because we regard Mack's failure to take reasonable remedial measures or to disclose the perjury as a serious breach of the rules of professional conduct, we concur in the referee's recommendation.
The court, having considered all of the facts and circumstances surrounding this matter and the petition of the director, now orders (1) that the present suspension of John E. Mack continue indefinitely with no right to petition for reinstatement until July 23, 1995; and (2) that any petition for reinstatement be made pursuant to Rule 18, Rules on Lawyers Professional Responsibility.
So ordered.
ANDERSON, J., took no part in the consideration or decision of this case.
NOTES
[1] The premium for the insurance on a second vehicle was said to have been included in this check.