**In re W. Otis CULPEPPER, Petitioner.**

No. 88–0674.

United States District Court,
E.D. Michigan, S.D.

July 15, 1991.

John L. Christensen, Detroit, Mich., for petitioner.

Charles K. Higle, Detroit, Mich., for respondent.

Before DeMASCIO, NEWBLATT and ROSEN, District Judges, sitting as a three-judge panel pursuant to Eastern District of Michigan Local Rule A–7(c).

## MEMORANDUM OPINION AND ORDER DENYING WITHOUT PREJUDICE PETITIONER'S APPLICATION FOR REINSTATEMENT

ROSEN, District Judge.

This matter has come before the Court on the Petition of W. Otis Culpepper for Reinstatement to practice before this Court.

### I. PERTINENT FACTS

Petitioner W. Otis Culpepper was found guilty following a trial in this court on May 12, 1988 of three counts of income tax evasion and failure to file income tax returns for specific years in violation of 26 U.S.C. § 7201. On August 17, 1988, Mr. Culpepper was sentenced to (1) three years confinement for two counts of failure to file income tax returns and (2) five years probation commencing upon his release from incarceration for one count of income tax evasion, and ordered to pay a fine of $15,000.

Following his conviction, Mr. Culpepper was suspended from the practice of law by the Michigan Attorney Discipline Board for a period of two years. Then, on May 26, 1988, the late Chief Judge Philip Pratt entered an Order of Suspension for Conviction of a Serious Crime in this Court, suspending Mr. Culpepper from the practice of law before the U.S. District Court of the Eastern District of Michigan, pursuant to Eastern District Local Rule A–1(a).[1]

Upon completion of his two-year state Bar suspension period, Mr. Culpepper filed an application with the Michigan Attorney

---

1. Judge Pratt's May 26, 1988 Order suspended Mr. Culpepper from the practice of law before the District Court and the Bankruptcy Court for the Eastern District of Michigan, and provided that his federal court suspension would continue indefinitely until he satisfied all of the requirements of the Michigan Attorney Discipline Board *and* this court's Local Rules *or* "until further Order of this Court."

Discipline Board for reinstatement of his license to practice law before the State courts. He was reinstated by a panel of that Board on November 8, 1990. Then, on December 14, 1990, Mr. Culpepper filed an application for reinstatement to practice before this court. At a hearing on Mr. Culpepper's application, the Court learned that Petitioner was still serving the sentence imposed by this court in 1988, and would not complete his parole term until January 1992.[2] The Court, therefore, requested that counsel brief the issue of whether Mr. Culpepper's parole and/or probation status precludes his reinstatement to practice before this Court.

Having considered the briefs submitted by counsel, and the oral arguments and evidence presented at the reinstatement hearing, the Court is now prepared to rule on Petitioner's application, and this Memorandum Opinion and Order sets forth that ruling.

## II. DISCUSSION

### A. THIS COURT IS NOT BOUND BY THE DETERMINATION OF THE STATE GRIEVANCE BOARD.

█ Mr. Culpepper contends that this Court's Local Rules regarding admission to practice, discipline and reinstatement after suspension or disbarment "entirely rely on the previous findings of another forum as to the competency and moral character of the applicant" and, therefore, since he has been reinstated to practice before the Michigan state courts, this Court cannot make an independent investigation of his fitness to practice law, but rather must also automatically reinstate him.

The pertinent Local Rules of the Eastern District of Michigan are Local Rules 12, A–1, A–2, and A–7.

Local Rule 12 governs Admission and Practice before this Court. That rule provides in pertinent part:

**(b) Eligibility for Admission.** Any person who is duly admitted to practice in a Court of record in any of the States, of the District of Columbia, or any United States District Court and who remains in good standing is eligible for admission to the Bar of this Court.

While Mr. Culpepper relies on this rule as principal support for his contention that his reinstatement to practice in Michigan state courts entitles him to automatic reinstatement before this Court, without further investigation, it appears that he has overlooked the express provisions of subsection (c) of Rule 12. With regard to attorneys who seek *readmission* after having been suspended or disbarred from the practice of law by *any* court, subsection (c) of Rule 12 provides for readmission only upon petition, and that upon the filing of such a petition, "The Chief Judge of the Court shall conduct *or order such investigation as the circumstances require*".

Moreover, Local Rule A–7 only provides for "automatic reinstatement" of attorneys who have been suspended for 119 days or less. "An attorney suspended for more than 119 days or disbarred may not resume practice until reinstated by order of this Court." Local Rule A–7(a).

Mr. Culpepper's suspension by this Court was for an indefinite term and his state court suspension was for two years. Therefore, it is clear that the "automatic" reinstatement provisions of Eastern District Local Rule A–7(a) do not apply here.

Subsection (c) of Eastern District Local Rule A–7 provides the procedures and burden of proof governing reinstatement of suspended attorneys:

Petitions for reinstatement by a disbarred or suspended attorney under this Rule shall be filed with the Chief Judge of this Court.... *The Judge or Judges assigned to the matter shall within 30 days after referral schedule a hearing*

---

**2.** After serving 11 months of his three-year incarceration sentence for the two counts of failure to file income tax returns in prison, Mr. Culpepper was released on parole. At the hearing on Petitioner's application for reinstatement, the Court was informed that Mr. Culpep-

per will remain on parole from his incarceration sentence until January 28, 1992, *and* will continue to serve his sentence of probation on the tax evasion count until April 12, 1995. [See March 1, 1991 Memorandum of United States Probation Officer Gail P. Conner.]

*at which the petitioner shall have the burden of demonstrating by clear and convincing evidence that he has the moral qualifications, competence and learning in the law required for admission to practice before this Court and that his resumption of the practice of law will not be detrimental to the integrity and standing of the Bar or to the administration of justice, or subversive of the public interest.*

[Emphasis added.]

Thus, contrary to Mr. Culpepper's contention, there is no provision in the Local Court Rules regarding admission and reinstatement which would entitle him to "automatic" reinstatement without further investigation by this Court because of his reinstatement to practice before Michigan courts.[3]

Furthermore, Mr. Culpepper's contention that this Court must reinstate him simply

because the Michigan Attorney Grievance Commmission determined that he is fit to practice before Michigan state courts is not supported by case law.

This very proposition was discussed in detail and rejected in *Matter of Discipline of Olkon,* 795 F.2d 1379 (8th Cir.1986). That case, like this matter, involved a petition for reinstatement to practice before the federal court filed after the attorney, who had been convicted for insurance fraud, was reinstated to practice before the state court. The District Court denied Olkon's petition for reinstatement.

On appeal, Olkon argued—just as Mr. Culpepper argues here—that the District Court could not deny him reinstatement when the Minnesota Court had readmitted him to practice in state courts.[4] The Eighth Circuit rejected that argument:

The Supreme Court has recognized that federal district courts have power

---

**3.** Mr. Culpepper also points to Local Rule A–2 as support for his contention that this Court cannot deny him reinstatement because he has been reinstated to practice before Michigan courts. Specifically, Mr. Culpepper relies upon subsection (b) of Rule A–2 which provides:

Upon receipt of notice in writing that an attorney admitted to practice before this Court has been disciplined by another Court, this Court shall forthwith enter an order imposing the identical sentence.

Again, Mr. Culpepper's reliance on this subsection ignores the provisions of Local Rule A–1, which provides, in pertinent part:

(a) Upon *conviction in any court of a serious crime* as hereinafter defined of any attorney admitted to practice before the Court, the Court shall enter an order immediately suspending that attorney … *until final disposition of a disciplinary proceeding to be commenced upon such conviction.*

Subsection (b) of Local Rule A–1 includes *willful failure to file income tax returns* within the definition of "serious crime". Furthermore, subsection (f) provides only limited circumstances for "immediate reinstatement" of an attorney suspended under Local Rule A–1—an attorney suspended under this rule is only entitled to immediate reinstatement when the "the underlying conviction of a serious crime has been reversed."

Mr. Culpepper was suspended by Judge Pratt under Local Rule A–1, *not* Local Rule A–2. Thus, his argument that the Local Rules require treatment by this Court "identical" to the Michigan Attorney Discipline Board's treatment of his application for reinstatement is without merit.

**4.** Like *Olkon,* Mr. Culpepper relies on *In re Abrams,* 521 F.2d 1094 (3rd Cir.), *cert. denied,* 423 U.S. 1038, 96 S.Ct. 574, 46 L.Ed.2d 413 (1975), for the proposition that the federal court cannot impose a punishment more severe than that of the state.

In *Abrams,* the state supreme court conducted a disciplinary proceeding which resulted in a one-year suspension from practice. Based only on the record of the state court's disciplinary proceedings, the district court disbarred Abrams. On appeal, the Third Circuit reasoned that the "absolute and unfettered power of the district court to discipline lawyers may be circumscribed to the extent the district court, in imposing its disciplinary sanctions, relies upon a state's legal or factual determinations." *Abrams,* 521 F.2d at 1101. However, in *Abrams,* the district court conducted no investigation of its own and relied exclusively on the record of the state's disciplinary proceedings in determining Abrams' discipline.

The Eighth Circuit found *Abrams* to be distinguishable from, and not applicable to, the *Olkon* case:

The facts underlying the *Abrams* decision are inapposite to Olkon's situation. Here, the district court properly followed its own rules and, through the United States Attorney's Office, conducted an independent investigation of Olkon's character and fitness to practice. After considering the results of that investigation and Olkon's response to it, the district court decided, not to disbar, but to continue Olkon's suspension.

795 F.2d at 1384 (emphasis added).

*independent* of state courts to discipline attorneys admitted to practice before the federal bench. *See In re Ruffalo*, 390 U.S. [544] at 547, 88 S.Ct. [1222] at 1224 [20 L.Ed.2d 117 (1968)]; *Theard v. United States*, 354 U.S. 278, 281–82, 77 S.Ct. 1274, 1276–77, 1 L.Ed.2d 1342 (1957); *Selling v. Radford*, 243 U.S. 46, 50–51, 37 S.Ct. 377, 379, 61 L.Ed. 585 (1917). Thus, the district court had the authority to consider *any* evidence relevant to the petition for reinstatement.

795 F.2d at 1383 (footnote omitted and emphasis added).[5]

As Mr. Culpepper points out in his Brief, there have, however, been occasions when courts have found that, in the absence of exceptional circumstances, it is appropriate for a federal court to adopt a state court's determination regarding attorney discipline. *See, e.g., In re Isserman*, 348 U.S. 286, 73 S.Ct. 676, 97 L.Ed. 1013 (1953), *vacated on rehearing*, 384 U.S. 1, 75 S.Ct. 6, 99 L.Ed. 3 (1954). *See also, Matter of Abrams* (discussed in note 4 *supra*).

Mr. Culpepper relies heavily on the policy arguments against disparity of sanctions between state and federal courts discussed by Judge Rosenn in his concurring opinion in the *Abrams* case:

The imposition of disbarment by the federal court when the state has imposed only suspension implicitly attacks the regularity and judgmental values of the state proceedings, implying that the

sanction chosen by the state courts is inappropriate. This result is bound to create tensions between the state and federal judiciaries.

The second important policy behind the need to avoid disparate sanctions by the federal and state courts is the maintenance of public confidence in our legal system and in the bar.... The district court's action permits Abrams to practice in the state, but not in the federal system. Such an anomaly can only lead to confusion in the minds of the public, which justifiably may speculate why an attorney not qualified to practice in a federal court has sufficient moral character to practice in the state court. Unless an exceptional reason of record justifies such disparate treatment, its effect will, in my opinion, render a grave disservice to the public.

521 F.2d at 1106.

While Judge Rosenn's policy discussion is compelling, as noted in note 4 *supra*, this case is readily distinguishable from *Abrams*. Moreover, the fact remains that Judge Rosenn's discussion was not the basis of the decision in that case; it is only a concurring opinion, and, even Judge Rosenn qualifies his opinion by suggesting that if an exceptional reason of record justifies disparate treatment, he might find differently. In this case, the Michigan Attorney Discipline Board Hearing Panel's Report on the reinstatement of Mr. Culpep-

---

5. The *Olkon* court further explained its reliance on the *Ruffalo, Theard* and *Selling* decisions in concluding that the district court did not err in looking into matters not considered by the state court as follows:

We recognize that these Supreme Court cases stand for the proposition that "disbarment by federal courts does not automatically flow from disbarment by state courts." *Theard*, 354 U.S. at 282, 77 S.Ct. at 1276. However, if the federal court has the power not to follow a state court disciplinary action, by implication, the federal court must also be capable of imposing a more severe discipline than that imposed by the state court. This is especially true where, as here, the district court did not rely on the state court's record but conducted an independent investigation into the matter. 795 F.2d at 1379, n. 3.

The Eighth Circuit's reasoning is consistent with the reasoning of the United States Supreme

Court. As the Supreme Court explained in *Theard, supra,*

The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom, in the present context, lawyers are included. The [federal] court's control over a lawyer's professional life derives from his relation to the responsibilities of [that] court.

77 S.Ct. at 1276. *See also, In re Ruffalo, supra* ("Though admission to the practice before a federal court is derivative from membership in a state bar, disbarment by the State does not result in automatic disbarment by the federal court. *Though that state action is entitled to respect, it is not conclusively binding on the federal courts*." 390 U.S. at 547, 88 S.Ct. at 1224 (emphasis added).)

per does not reveal that that body considered the effect of Mr. Culpepper's continued federal parole or probation status. Thus, we have here an arguable "reason of record supporting disparate treatment".[6]

More importantly, unlike this case, the underlying reason for the federal court's disbarment in *Abrams,* was *not* a criminal conviction. In that case, the petitioner-attorney had never been convicted of any crime. The State court disciplinary action was predicated solely on what the New Jersey Supreme Court characterized as a "serious" violation of ethical standards, *see In re Abrams,* 65 N.J. 172, 320 A.2d 471 (1974). In this case, it was Mr. Culpepper's *conviction, in this Federal Court,* that led to his automatic suspension from the practice of law.

Since, under the foregoing authorities, this Court's consideration of Mr. Culpepper's application for reinstatement is not limited to matters considered by the State Bar, nor is it bound by the State Bar's decision to reinstate Mr. Culpepper to the practice of law before Michigan courts, this Court is entitled to consider the effect of parole and probation on his reinstatement to practice before the federal bench, particularly since the underlying conviction occurred in this Court, and it is the Federal Probation Office, with whom Mr. Culpepper would have direct dealings as an attorney, that is supervising his own parole and probation.

## B. EFFECT OF PAROLE AND PROBATION

Mr. Culpepper cites no state or federal case law directly on point supporting his contention that his being on parole from his sentence of confinement and still serving a sentence of probation does not preclude his readmission to practice before this Court.

Rather, he argues that because the Attorney Grievance Commission reinstated him knowing that he was on parole and serving a sentence of probation establishes that there is no "compelling" reason why he cannot be readmitted to this District Court. [See Petitioner's Brief, p. 9].[7]

■ Both parties are correct that there are no Michigan cases dealing with either the parole or probation issue. However, research has turned up several cases from other state courts which deal directly with both issues.

### 1. *Parole*

In *Matter of Reinstatement of Walgren,* 104 Wash.2d 557, 708 P.2d 380 (1985), the Washington Supreme Court held that the petitioner-attorney could not be reinstated into the Washington State Bar until he satisfactorily completed the conditions of his parole and was discharged therefrom pursuant to the applicable federal statute.

Walgren, who was at the time of his indictment the Majority Leader of the Washington State Senate, was found guilty by a federal court for violation of the RICO, mail fraud, and travel act statutes. He was sentenced to 5 years imprisonment and began serving that sentence on May 21, 1982, shortly following the time when his petition for certiorari to the United States Supreme Court was denied. On June 21, 1982, Walgren stipulated to disbarment.

After having served two years of his prison sentence, Walgren was released on parole on May 21, 1984. The parole, which was supervised by a Seattle-based federal parole officer, officially was scheduled to terminate on May 20, 1987.

On July 31, 1984, Walgren applied for reinstatement to the bar. A hearing was

---

**6.** Note also that in both *Isserman* and *Abrams,* the federal courts did not conduct an independent investigation into the matters pertaining to the decisions to disbar the attorneys. In *Isserman* there was no Supreme Court rule providing for independent investigation, and in *Abrams* it was the district court's failure to follow its local court rules which, like our Local Rules, provided for an independent investigation that ultimately persuaded the Third Circuit

that the district court had erred in imposing a more severe sanction than the state court.

**7.** Although the State Attorney Grievance Commission obviously knew that Mr. Culpepper was on parole and probation when it reinstated him, there is nothing in the record to indicate that it considered this issue as part of its decision.

held on December 17, 1984 before the Washington State Bar of Governors, at which hearing Walgren—like Petitioner Culpepper—presented numerous witnesses and numerous letters in support of his reinstatement.

Upon reviewing the record of the Board of Governor's hearing, the Washington Supreme Court found that

*Walgren's character, standing, and professional reputation in the community are not seriously questioned. There is no evidence of any other wrongdoing in Walgren's career, either as an attorney or politician.* No question is raised in the record as to Walgren's ethical standards while he practiced law nor has any doubt been cast on Walgren's proficiency as an attorney. Finally, there is no evidence suggesting that Walgren has not been truthful, frank and sincere in discussing his disbarment and reinstatement.

708 P.2d at 383.

Nonetheless, the *Walgren* court was concerned whether Walgren should be readmitted to the practice of law while he was still on parole. The Washington Supreme Court's opinion in that case contains a detailed and well-reasoned discussion regarding this issue:

*Our research indicates that the question of whether an attorney on parole for a felony conviction may be reinstated has not been squarely addressed by an American court....* Analysis of

this question requires us to examine the legal disabilities which attach to a paroled convict and the extent to which these disabilities should preclude the parolee from engaging in the practice of law....

[P]ersons convicted of felonies whose civil rights have not been restored, may not vote in this state. They may not qualify as jurors; they may not hold certain positions of trust such as executor or administrator; they are excluded from being guardians for incompetent or disabled persons; their accounting license may be revoked; their veterinarian licenses may be revoked; their psychologist's licenses shall be revoked.

While the convicted felon is subject to a variety of civil disabilities, these disabilities may be expunged if the felon's civil rights are restored. States vary as to when a convicted felon's civil rights may be restored. For persons on parole, the rule in Washington is that parolees' civil rights are restored when they have satisfactorily performed the obligation of their parole.[8]

A person on parole does not have the full panoply of rights. *Parole is a state of conditioned liberty; a prison without walls.* While a person on parole may participate in nonprison-like activities, the State properly subjects him to many restrictions not applicable to other citizens. *A release on parole does not represent a pardon nor does it alter the*

---

**8.** Unlike many other states, Michigan has not statutorily or constitutionally defined "restoration" of a convicted felon's "civil rights", or when such restoration occurs.

The Sixth Circuit has held that "a felon has not had his 'civil rights' restored unless, pursuant to the law of the state of conviction, he possesses the right to vote, to serve on a jury *and* to seek and hold public office." *United States v. Breckenridge*, 899 F.2d 540, 542 (6th Cir.1990), *quoting, United States v. Cassidy*, 899 F.2d 543, 549 (6th Cir.1990). *See also*, Federal Probation Manual (January 1990), Vol. X, Chap. IV, Part G "Rights and Privileges of Persons Under Supervision".

Under Michigan law, a person convicted of a crime is excluded from voting only while he/she is incarcerated. Michigan Constitution of 1963, art. 2, § 2; M.C.L. § 168.758b. Once released from prison, former felons' voting rights

are restored. However, a person is not entitled to serve as a juror while he/she remains under a sentence for a felony, M.C.L. § 600.1307a. Nor is a person who has been convicted of a felony involving a breach of public trust within the preceding 20 years entitled to run for, or hold a position as a member of, either house of the Michigan state legislature. Michigan Constitution, art. 4, § 7.

Since under Michigan law Mr. Culpepper is precluded from serving on a jury while he remains "under a sentence for a felony" (i.e., on parole from a sentence of incarceration for Counts 3 and 4, and under a sentence of probation for Count 1), and precluded from running for or holding office as a state legislature for 20 years after his conviction, by application of *Breckenridge* and *Cassidy*, his civil rights are not yet restored.

*criminal's sentence.* Rather, it represents a less restrictive period during which criminals are offered the opportunity to prove they can reintegrate themselves into society without the imposition of the full prison sentence....

*[I]n this court's capacity of regulating the practice of law, our duty is to determine whether Gordon Walgren, who has not yet completed his federal parole, may be adjudged to qualify for the privilege of practicing law.*

*We hold attorneys will not be reinstated into the Bar until they have successfully completed the conditions of their parole and have been finally discharged. Reinstatement prior to the elapse of parole would not comport with the principle that a parolee is not to be accorded complete liberty and privilege prior to successful completion of parole.*

*This rule is empirically supported by the weight of authority in this country. A computer survey of national reinstatement cases has failed to reveal a case in which an attorney has been readmitted prior to the elapse of his parole.*

\* \* \* \* \* \*

*[Therefore,] not until he successfully completes his parole and is discharged may Gordon Walgren be reinstated into the Bar of the State of Washington.*

708 P.2d at 387–388 (citations omitted and emphasis added.) *See also In re Finn,* 256 A.D. 288, 10 N.Y.S.2d 29 (1939), in which the New York Supreme Court refused to reinstate a paroled convict who had been pardoned by the Governor of New York where the pardon provided that no term or condition of parole was cancelled or changed by the pardon.

The Minnesota Supreme Court took a less stringent approach to the parole issue in *Matter of Thompson,* 365 N.W.2d 262 (Minn.1985). In that case the Minnesota Supreme Court denied the petition for reinstatement to the Minnesota State Bar of a previously convicted felon who was at the time of petitioning for reinstatement on parole from his sentence of imprisonment. The petitioner had applied for readmission to the State Bar six months after he was released on parole.

Although the Minnesota court expressed its belief that final discharge from parole should ordinarily precede an application of reinstatement, it declined to adopt an absolute rule that continued probationary or parole status bars an application for reinstatement. Rather, the court focused on the length of time that the petitioner had been on parole prior to petitioning for readmission. The *Thompson* court was not satisfied that the six months time that the petitioner had been on parole prior to his application for readmission was sufficient to prove his ability to conform to the Code of Professional Responsibility, and therefore, denied the petition for reinstatement, explaining:

[T]he fact of the petitioner's release on parole cannot be construed as definitive assurance of his fitness to practice law.... By its terms, the release is conditional; the petitioner remains in the legal custody and control of the Commissioner of Corrections and is subject to potential return to the facility if he deviates from established guidelines....

Even though it is not a prerequisite for readmission to the bar, final discharge from parole or probationary status should ordinarily precede an application for reinstatement.... Absent a final discharge, there must be a showing—as the basis for a petition for reinstatement—that the petitioner has complied with the conditions of parole for a period of time sufficient, given the gravity of the crime for which the petitioner was convicted to warrant an inference that the petitioner is reliable and trustworthy and will not violate the law.

365 N.W.2d at 264–265.

### 2. *Probation*

Several courts have addressed the issue of whether a petitioner who is serving a sentence of probation should be readmitted to the practice of law before he has completed serving that sentence.

In *The Florida Bar Petition of Pahules*, 382 So.2d 650 (Fla.1980), an attorney who had been convicted of, and sentenced to incarceration on, two counts of grand larceny and four counts of petty larceny served one year of imprisonment in 1972–73, and then in May 1973 was placed on probation. His probation continued until June 1982. In September 1977, while he was still on probation, Pahules applied for reinstatement to the Florida State Bar. The Florida Supreme Court denied his application because it determined that "rehabilitation will not be accomplished until he has successfully completed his probation." *Id.* at 651.

Similarly in *Matter of Griffin*, 101 N.M. 1, 677 P.2d 614 (1983), the New Mexico Supreme Court disbarred an attorney who was sentenced to probation for 18 months after he pled no contest to a charge of securities fraud for the period of time that he remained on probation, explaining,

> [I]t is inconsistent with the practice of law under a license granted by this Court for an attorney to be allowed to practice law while he is on probation for a criminal sentence for a serious crime such as this.

*Id.*

Likewise, in *Matter of Norrid*, 100 N.M. 326, 670 P.2d 580 (1983), the New Mexico court disbarred an attorney who, like Petitioner Culpepper, was sentenced to probation for income tax evasion, explaining

> We are mindful that Norrid has now fully paid his back taxes and the penalties he incurred. However, it is the policy of this Court that attorneys should not be allowed to practice law while on probation under a criminal sentence.
>
> We therefore disbar Norrid until he is no longer on probation. At the end of this period, Norrid may move for reinstatement only upon a showing that he has taken and passed the Multi-state Professional Responsibility Examination with a score set by this Court under the Rules for Admission to the New Mexico Stat Bar....

*Id.*

New York has also held that an attorney who has petitioned for reinstatement while he is still on probation will not be readmitted to the practice of law in that state. *See e.g., In the Matter of Levine*, 138 A.D.2d 166, 530 N.Y.S.2d 3 (1988); *In the Matter of Safran*, 107 A.D.2d 238, 240, 486 N.Y.S.2d 233 (1st Dept.1985); *In the Matter of Florentino*, 103 A.D.2d 56, 58, 478 N.Y.S.2d 289 (1st Dept.1984).

On the other hand, in *In re Kreamer*, 14 Cal.3d 524, 121 Cal.Rptr. 600, 535 P.2d 728 (1975), the California Supreme Court refused to suspend an attorney who had been convicted of a federal crime and sentenced to incarceration followed by probation, even though he was still on federal probation at the time of the disciplinary proceedings. In that case, the court found that the petitioner's suffering ignominy of criminal conviction and serving time in a penal institution were favorable mitigating factors warranting allowing him to practice law while still on probation. 14 Cal.3d at 532, 121 Cal.Rptr. 600, 535 P.2d 728.

By application of the foregoing authorities to the facts of this case, this Court concludes that Mr. Culpepper's application for reinstatement must be denied at this time. Although the Court was impressed with Mr. Culpepper's testimony and sincerity concerning his contrition and rehabilitation, as well as the testimony of other witnesses at the hearing regarding his competence and learning in the law, the Court finds that his resumption to the practice of law before this Court before he has completed his term of parole on the sentence of incarceration on Counts 3 and 4 would be detrimental to the integrity and standing of the Federal Bar. There are numerous reasons for this finding.

First, with respect to Mr. Culpepper, this Court adopts the reasoning of the Washington Supreme Court's decision in *Walgren*, discussed at length, *supra.* Just as the Washington Supreme Court found that "Walgren's character, standing and professional reputation in the community [were] not seriously questioned," and that Mr. Walgren was "truthful, frank and sincere in discussing his disbarment and reinstatement," we find that to be the case with Mr. Culpepper. However, these considerations

do not end our inquiry. We find very compelling the policy basis for the Washington court's denial of Walgren's petition for reinstatement, particularly the court's statement that

> Reinstatement prior to the elapse of parole would not comport with the principle that a parolee is not to be accorded complete liberty and privilege prior to successful completion of parole.
>
> This rule is empirically supported by the weight of authority in this country. A computer survey of national reinstatement cases has failed to reveal a case in which an attorney has been readmitted prior to the elapse of his parole.

At a time such as the present when the ethics and practices of the legal profession are under intense public scrutiny and criticism, it seems to this Court inappropriate to reinstate to the practice of law an attorney who is still serving a sentence of incarceration imposed by this Court. This is particularly so since, as noted, *supra*, while a person remains under a sentence for a felony, he/she is be precluded from serving as a juror. This Court does not believe that the ethical standards expected of attorneys representing clients before this court, either real or as perceived by the public, should in any way be compromised or reduced, which the Court believes would be the effect of reinstating an attorney under the circumstances presented here. In this Court's view, it would be a disservice to the public, to the practicing bar and this Bench to effectively say that, although a person is legally disabled, by virtue of his

criminal conviction status, from serving as a juror, it is acceptable for him to serve as an officer of this court.

Further, in terms of the public perception and Mr. Culpepper's ability to represent criminal defendants in this court, Mr. Culpepper's parole is being supervised by the Federal Probation Office in this District, an agency with which, as a criminal defense attorney practicing in this Court, he would necessarily have an "adversary relationship" when representing his clients. Even if Mr. Culpepper did not himself believe there would be a conflict in this dual-faceted relationship with the Probation Office, there is certainly an appearance of one.[9]

### III. CONCLUSION

For these reasons, the Court will DENY Mr. Culpepper's petition for reinstatement WITHOUT PREJUDICE to his right to petition for reinstatement after he has satisfactorily completed his term of parole, which he is presently scheduled to complete on January 28, 1992.

IT IS SO ORDERED.

DeMASCIO, District Judge, concurring.

I concur in Judge Rosen's Opinion and Order.

NEWBLATT, District Judge, dissenting.

While I disagree not only in the result, but in the reasoning of my brothers, I acknowledge that Judge Rosen has well stated the existing law.[1] The law, however, is not settled in this jurisdiction.

---

**9.** The Court does see a substantive difference between "parole" and "probation" in that "parole" is a continuation of a sentence of incarceration, it is, as the Washington Supreme Court explained in *Walgren, supra,* "prison without walls". On the other hand, "probation" is not a continuation of sentence of incarceration.

Notwithstanding the distinction between parole and probation, the Court has some serious concerns at this time about the potential adverse effect on the integrity and standing of this Bench and Bar of Mr. Culpepper's readmission to practice before this Court prior to the April 12, 1995 completion of his sentence of probation on Count 1. However, because Mr. Culpepper has been serving that probationary sentence concurrently with his term of parole since his

release from prison, by the January 28, 1992 termination of his parole, he will have served approximately one half of his five-year probationary sentence.

Therefore, the Court believes that by the January 28, 1992 termination of his parole term, Mr. Culpepper will have been on probation for a sufficient period of time to enable the Court to make an objective evaluation of his satisfaction of the conditions of his probation, and thereby provide a basis for rendering a determination regarding his fitness to return to the practice of law before this Court at that time, notwithstanding the continuation of his term of probation. *See, Matter of Thompson, supra.*

**1.** I agree that reinstatement by the State Bar of Michigan does not entitle Mr. Culpepper to au-

It must be acknowledged that admitting a convicted felon to the Bar of this Court might be embarrassing in the event he thereafter engages in attorney misconduct. But the risk of embarrassment, even humiliation, is a risk borne by every judge in every ruling she or he might make. That risk ought not prevent one from doing that which *the evidence* commands one to do.

My colleagues take the position that Mr. Culpepper's application for reinstatement "must be denied at this time," finding that "his resumption of the practice of law before this Court before he has completed his term of parole on the sentence of incarceration on Counts 3 and 4 would be detrimental to the integrity and standing of the Federal Bar." They base their conclusion on the policy basis set forth by the Supreme Court of the State of Washington in *In Matter of Reinstatement of Walgren*, 104 Wash.2d 557, 708 P.2d 380 (1985):

> Reinstatement prior to elapse of parole would not comport with the principle that a parolee is not to be accorded complete liberty and privilege prior to successful completion of parole.

While I have no disagreement with the principle that a parolee is not to be accorded *complete* liberty and privilege before successfully completing parole, neither the author of the quote nor my colleagues have set forth what liberties or privileges a parolee might have and which ones ought to be denied. That distinction is inherent in the quotation which says "*complete* liberty and privilege" are not accorded a parolee (underlining added). More importantly, they have failed to state the rationale for such distinction. The current intense public scrutiny of the ethics and practices of the legal profession, as urged by my colleagues, is not a justification for denying readmittance. The legal profession is always under scrutiny. It is the nature of the profession and the adversarial process which properly induces the scrutiny. But that is totally irrelevant to the issue—has Mr. Culpepper proven by a preponderance

of the evidence that he should be readmitted?

Likewise, I find it irrelevant that while a person remains under sentence for a felony, she or he is precluded from serving as a juror. There is no relationship whatever in the functions of an attorney and a juror. My colleagues further state that they do "not believe that the ethical standards expected of attorneys representing clients before this court ... should in any way be compromised or reduced, which ... would be the effect of reinstating an attorney under the circumstances presented here." Unfortunately, my colleagues fail to state how readmitting Mr. Culpepper under these circumstances would compromise or reduce the ethical standards of attorneys. Those standards remain the same whether Mr. Culpepper is readmitted or not.

And my colleagues weigh in their reasoning the fact that Mr. Culpepper will be supervised on his present probation and/or parole status by members of the Federal Probation Office of this district. Again, they expressly base their concerns on public perception as distinguished from reality. I do not understand where they obtain this public perception—how it was made known to them. They make some reference to the "adversary relationship" Mr. Culpepper might have in dealing with probation office staff on behalf of clients when Mr. Culpepper is himself supervised by staff members of the same office. I simply cannot agree. I think the reasoning is flawed and obscured by the use of the phrase "adversary relationship." As a member of the Bar of this Court, Mr. Culpepper would have to deal with probation officers who are investigating convicted clients for purposes of writing reports for the judge. Part of the role of the probation officer is to make preliminary findings of fact in order to apply the sentencing guidelines. In that process an attorney presents facts to the probation officer and contests the facts submitted by others. If the probation offi-

tomatic readmittance to the Bar of this Court. The determination by the State Bar is entitled to respect and consideration here, but is not binding upon us. Our obligation cannot be fulfilled

by the State Bar of Michigan. Moreover, we have a right to look into matters not considered by the State Bar.

cer makes a finding with which the attorney disagrees, the judge resolves the matter. How Mr. Culpepper's being on probation/parole would be affected in this process is simply assumed by my colleagues. I submit one could just as easily, but not any more accurately, say Mr. Culpepper would be in an adversarial relationship with the judge to whom he brings his disagreement. To so state is to refute. The attorney is in an adversarial relationship to his legal opponent, who, in a criminal case, is the United States Attorney and his staff, not the Probation Department. In my view it is specious to justify denying readmission on the mere labelling of a relationship as adversarial.

I am mindful that Mr. Culpepper was sentenced by a judge of this Court who had a complete background investigation of Mr. Culpepper before him before sentence was imposed—a report which no member of this panel has sought to examine. Nor have we sought the view of the sentencing judge. Had the sentencing judge deemed Mr. Culpepper not qualified to be readmitted until after he completed his probationary sentence and/or parole term, he could have so stated. He could have made it a condition of the probationary sentence. If the probation department felt Mr. Culpepper should not be readmitted while he was on parole, they likewise could have communicated that view to the Court together with the reasons. If the United States Attorney felt that Mr. Culpepper should not be readmitted, he too could have expressed a view.

No one has opposed his readmission, and while there is a risk, just as there is a risk when admitting an attorney for the first time, that risk, standing alone, does not justify denying readmission until parole and/or probation have been completed. Such a blanket rule would prevent one from getting one's life in order and returning to that for which one is trained *if otherwise justified.*

The final reason I reject my colleagues' position is because a determination made by prison authorities as to parole is wholly unrelated to a determination that one has or has not been sufficiently rehabilitated to justify readmission to this Court's Bar. Both the periods of probation and parole are determined without regard to eligibility or competency to practice law. Using that period to bar readmission is arbitrary when all the other facts, as my colleagues admit, would justify readmission.

I dissent and would determine Mr. Culpepper eligible to practice in this Court.