EM-2001-03                                    1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>   Eduardo R. Ramos Muñoz | 2001 TSPR 144<br><br>155 DPR ____ |

Número del Caso: EM-2001-03


Fecha: 10/octubre/2001


Abogado del Peticionario:
                          Lcdo. José A. Rubio Pitre


Oficina del Procurador General:
                          Lcda. Cynthia Iglesias Quiñones
                          Procuradora General Auxiliar


Procurador Especial de la Comisión:
                          Lcdo. Pedro Goyco Amador
                          Lcdo. Alcides Oquendo Solís


Materia: Admisión a la Abogacía


     Este documento constituye un documento oficial del Tribunal
     Supremo que está sujeto a los cambios y correcciones del proceso
     de compilación y publicación oficial de las decisiones del
     Tribunal. Su distribución electrónica se hace como un servicio
     público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

Eduardo R. Ramos Muñoz

EM-2001-03

PER CURIAM

San Juan, Puerto Rico, a 10 de octubre de 2001.

En el presente recurso nos corresponde dilucidar un asunto de primera impresión en nuestra jurisdicción, a saber: si la Comisión de Reputación para el Ejercicio de la Abogacía puede certificar el buen carácter y reputación de un aspirante convicto de delito que aún no ha cumplido la pena que le fuera impuesta por el Estado. Por entender que la referida Comisión está impedida de certificar el mismo, denegamos en estos momentos la solicitud de admisión al ejercicio de la abogacía presentada por el aspirante.

I

Eduardo R. Ramos Muñoz comenzó a cursar estudios en Derecho en agosto de 1991. En enero de 1995, mientras aún era estudiante, Ramos Muñoz tuvo un altercado con su sobrino y con su hermano paterno en el cual resultó muerto dicho sobrino y en donde se hirió de bala al referido hermano, padre del occiso. Por estos hechos Ramos Muñoz fue acusado de asesinato en primer grado, tentativa de asesinato y violación al artículo 8 de la Ley de Armas, 25 L.P.R.A. sec. 418. Tras el correspondiente juicio, el tribunal de instancia dictó sentencia en su contra por homicidio, agresión agravada y por el artículo 8 de la Ley de Armas, supra. Así, le condenó a cumplir seis (6) años de reclusión por el homicidio, tres (3) años consecutivos por el artículo 8 de la Ley de Armas, supra, y en forma concurrente con las anteriores, seis (6) meses por la agresión. Para esta fecha Ramos Muñoz ya había completado sus estudios en Derecho.

Luego de varios incidentes procesales, Ramos Muñoz comenzó a disfrutar de los beneficios de la Ley de Sentencias Suspendidas, Ley Núm. 259 de 3 de abril de 1946, 34 L.P.R.A. sec. 1027 et. seq. Según se desprende de la prueba documental que obra en autos, éste se encuentra sujeto a la misma hasta septiembre de 2003.

Así las cosas, en septiembre de 1999 Ramos Muñoz solicitó el examen de reválida y, tras aprobarlo, se inició el proceso para considerar su admisión al ejercicio de la abogacía. A tales efectos, la Comisión de Reputación para el Ejercicio de la Abogacía (en adelante, Comisión de Reputación) comenzó su investigación sobre el carácter y la reputación del aspirante. Luego del trámite de rigor, la referida Comisión concluyó que no estaba en condiciones de certificar la buena reputación del aspirante ya que éste no había cumplido la pena que le fuera impuesta por el Estado. Sin embargo, por estimar que se trataba de un asunto de estricto Derecho, procedió a elevar los autos del caso para que este Tribunal "resuelva si [la Comisión de Reputación] puede recibir prueba de buena reputación y

carácter de un aspirante que no ha cumplido la pena por los delitos por los que fue declarado convicto[.]"[1]

Vista la Resolución emitida por la Comisión de Reputación, le dimos término al Procurador General para que se expresara sobre la controversia. En cumplimiento con nuestra orden, el Procurador compareció y expresó su posición. A tales efectos, arguyó que al examinar la rehabilitación de una persona sujeta a una sentencia suspendida debe atenderse al momento en que se encuentre en la libre comunidad pues mientras esté sujeta a dicha pena no se podrá apreciar si ha habido una verdadera rehabilitación ya que durante ese tiempo se espera que su comportamiento sea bueno y que cumpla con las condiciones de su sentencia pues de lo contrario tendría como consecuencia la revocación del privilegio.

Tras examinar el asunto emitimos una Resolución en la que denegamos la solicitud de admisión presentada. Sin embargo, en la misma no elaboramos los fundamentos para nuestra denegatoria. En vista de la importancia del asunto acogemos la segunda moción de reconsideración presentada por el aspirante[2] y procedemos a expresarnos en cuanto a la controversia que nos ocupa.

II

Como es bien sabido, a la luz de nuestra función constitucional e inherente de reglamentar la profesión legal, este Tribunal regula la admisión de aspirantes al ejercicio de la abogacía. Véase, In re Rodríguez Torres, 104 D.P.R. 758, 767 (1976) e; In re Fund. Fac. Der. Eugenio Ma. de Hostos, res. el 9 de marzo de 2000, 2000 TSPR 38. Claro está, dicha facultad conlleva la enorme responsabilidad de velar porque los candidatos a ejercer la profesión estén capacitados y sean aptos para cumplir fiel y cabalmente las serias responsabilidades que entraña la abogacía. Véase, In re Gómez Morales, res. el 22 de octubre de 1998, 98 TSPR 139; In re C.R.R., 144 D.P.R. 365 (1997). Por ello, en protección del público, de la eficiente

---

[1] Resolución de la Comisión de Reputación emitida el 21 de agosto de 2000.
[2] Véase, moción de reconsideración del 13 de noviembre de 2000 y segunda moción de reconsideración del 29 de diciembre de 2000.

administración de la justicia y de la mejor imagen pública de la profesión legal, es necesario que los aspirantes demuestren que poseen el carácter y la reputación que los habiliten para el ejercicio de tan delicada profesión. In re C.R.R., supra.

A tales efectos, este Tribunal ha creado la Comisión de Reputación para que dicho organismo pase juicio sobre el carácter y reputación de todo aspirante.[3] A tenor con la Regla 1(B)(1) de su Reglamento, supra, la Comisión de Reputación tiene la facultad de evaluar, investigar y determinar el carácter y reputación de todo aspirante para el ejercicio de la abogacía. De esta forma, la referida Comisión le acredita a este Foro que el aspirante posee el buen carácter y la reputación para ejercer la profesión. In re Belén Trujillo, 128 D.P.R. 949, 958 (1991).

Como bien advierte la profesora Deborah L. Rhode,[4] la exigencia de una certificación de carácter y reputación, como prerequisito a la admisión profesional, tiene orígenes históricos. Su importancia es tal que todas las jurisdicciones estatales norteamericanas, y la mayoría de los países y profesiones, la exigen como condición para ejercer la profesión.[5] Sin embargo, aunque dicho requisito es parte esencial de todo proceso de admisión a la profesión legal, los contornos de los referidos términos no han estado libre de ambigüedad.

En un intento por delinear el contenido de los mencionados conceptos en In re Belén Trujillo, supra, a la pág. 960, comenzamos a precisar el término "carácter",[6] aduciendo que el mismo pretende excluir de la práctica actual o futura de la abogacía a personas que demuestren un patrón de

---

[3] Reglamento de la Comisión de Reputación para el Ejercicio de la Abogacía del 30 del junio de 1998, Regla 1(B)(2); 4 L.P.R.A. T.4 Ap. XVII-C R. 1(B)(2).

[4] Deborah L. Rhode, Moral Character as a Professional Credential, 94 Yale Law Joural, 491, 507 (1985).

[5] Deborah L. Rhode, supra a la pág. 493; Michael K. McChrrystal, A Structural Analysis of the Good Moral Character Requirement for Bar Admission, 60 Notre Dame L. Rev. 67 (1984); Brendalyn Burrel-Jones, Bar Applicants: Are Their Lives Open Books?, 21 J. Legal Prof. 153 (1996).

[6] Cabe aclarar que aquella ocasión nuestras expresiones no se limitaron al término "carácter", sino que también abarcaron el concepto "aptitud". Sin embargo, a la luz del Reglamento de la Comisión de Reputación, supra, mas bien procede que nos refiramos a los términos "carácter" y "reputación".

actitudes que, evaluados sus rasgos de carácter y de personalidad integralmente, reflejen una actitud personal que las inhabilitan para ejercer la profesión de abogado, ya que lo más probable es que en tal función causen daño a clientes actuales o futuros, obstruyan la administración de la justicia o violen los cánones del Código de Ética Profesional.

En aquella ocasión también mencionamos que un aspirante puede quedar inhabilitado si incurre en aquella conducta específica intencional que por su naturaleza grave y sus efectos perjudiciales (dentro de las circunstancias del caso) de por sí refleja rasgos de carácter y de personalidad que demuestran que dicha persona no es justa, honesta e íntegra. In re Belén Trujillo, supra, a la pág. 960.

En In re C.R.R., supra, nuevamente volvimos a considerar estos asuntos y expresamos que al hablar de carácter nos referimos esencialmente a los atributos de honestidad e integridad con que una persona se guía en sus relaciones y actuaciones con los demás, así como también a aquellos patrones de conducta que puedan reflejar su sentido de justicia y respeto hacia los derechos de sus semejantes y hacia las leyes. Igualmente, mencionamos que puede acudirse a la jurisprudencia que interpreta la Sec. 9 de la Ley del 11 de marzo de 1909, 4 L.P.R.A. sec. 735, sobre el ejercicio de la abogacía, respecto a las circunstancias indicativas de depravación moral en un abogado. In re C.R.R., supra

En la literatura jurídica una de las más nutridas discusiones en cuanto a las determinaciones de carácter y reputación se ha centrado sobre aquellos aspirantes que poseen un historial delictivo al momento de solicitar admisión al ejercicio de la profesión.[7] Sin embargo, en cuanto a la temática que nos concierne, (la procedencia de una solicitud de admisión cuando el aspirante aún no ha cumplido la pena que le fuera impuesta por el Estado), la discusión no ha sido tan exhaustiva. No obstante, la situación análoga

---

[7] Véase, Note, The Effect of Prior Criminal Conduct on the Admission to Practice Law: The Move to More Flexible Admissions Standards, 8 Geo. J. Legal Ethics 367 (1995) Deborah L. Rhode, supra a las págs. 537-540. Donald H.

de una solicitud de readmisión a la profesión cuando el solicitante aún se encuentra cumpliendo la pena impuesta por el Estado sí ha merecido oportuna consideración.[8]  Veamos.

En The Florida Bar Petition of Pahules, 382 So. 2d 650, 651 (Fla. 1980), el Tribunal Supremo de Florida determinó que no procedía la readmisión de cierto abogado previamente suspendido hasta que no cumpliera su probatoria. A juicio del referido foro, la rehabilitación del abogado convicto no se podría completar hasta tanto éste no terminara la misma.  Igualmente, en Matter of Reinstatement of Walgren, 708 P. 2d 380 (Wash. 1985), el Tribunal Supremo de Washington concluyó que mientras un abogado estuviera sujeto al régimen de libertad condicional no podría ser readmitido al ejercicio de la profesión en dicha jurisdicción.  Al llegar a su conclusión el Tribunal destacó que en todos los Estados Unidos no existía un sólo caso en que se hubiese readmitido a un abogado antes de que cumpliera con el periodo de libertad condicional.[9]  Además, el referido foro enfatizó que en dicha jurisdicción una persona sujeta a tal régimen no gozaba de todos los derechos civiles, intimando que dicha situación crearía una anomalía para quien ejerciera la profesión.[10]

Al mismo resultado llegó la Corte de Distrito de los Estados Unidos para el Distrito Este de Michigan en In re Culpepper, 770 F. Supp. 366 (E. D. Mich., 1991).  Así, tras acoger el razonamiento esbozado en Matter of Reinstatement of Walgren, supra, dicho foro resolvió que no procedía la readmisión de cierto abogado mientras estuviera bajo el régimen de libertad condicional.[11]  El Tribunal de Distrito fundamentó su decisión en dos (2) argumentos principales. En primer lugar, dicho foro estimó que éticamente sería inapropiado readmitir al ejercicio de la profesión a una persona que

---

Stone, The Bar Admission Process, Gatekeeper or Big Brother: An Empirical Study, 15 N. Ill. U. L. Rev 331 (1995); Michael K. McChrrystal, supra.

[8] Véase, Application of Dortch, 687 A.2d 245 (1997).

[9] Matter of Reinstatement of Walgren, supra a la pág. 388.

[10] Id.

[11] In re Culpepper, supra a la pág. 373.

aún no hubiese cumplido la pena impuesta por el Estado (a manera de ejemplo indicó que de readmitirlo se crearía la ironía de que dicha persona no podría ejercer como jurado ante el tribunal pero sí podría ser un funcionario de la corte y ejercer la profesión).[12]  De otra parte, el tribunal resaltó los posibles problemas de conflicto de interés que se crearían cuando el abogado asumiera la representación criminal de un acusado y a su vez tuviese que lidiar con la correspondiente oficina de probatoria, agencia a la cual el abogado estaría sujeto y con la cual podría tener una relación antagónica.[13]

En cuanto a la controversia particular que nos ocupa, el Tribunal de Apelaciones de Maryland dictaminó en Application of Dortch, 687 A.2d 245 (1997), que ni tan siquiera consideraría la solicitud de un aspirante mientras éste aún se encontrara bajo libertad condicional por un delito de tal magnitud que, de haber sido cometido por un abogado admitido a la profesión, necesariamente conllevaría su desaforo.

Como podrá apreciarse, las jurisdicciones que han examinado controversias similares a la de autos han desarrollado al menos dos posturas. De una parte existe cierta corriente que se niega a considerar una solicitud de readmisión a la profesión hasta tanto no se cumpla la pena impuesta por el estado.  De otro lado, se encuentra otra postura, más flexible, articulada por el Tribunal de Apelaciones de Maryland, en la cual no se considera una solicitud de un aspirante mientras éste aún se encuentre bajo una sanción estatal por un delito de tal magnitud que, de haber sido cometido por un abogado admitido a la profesión, conllevaría su separación. Ciertamente, cada una de las referidas tendencias posee importantes razones que la justifiquen.  Sin embargo, dado los hechos de este caso, es innecesario expresarnos sobre la postura que deba prevalecer en nuestra jurisdicción.  Esto pues, bajo cualquiera de las dos procedería denegar, en estos momentos, la solicitud presentada.  Evidentemente, los delitos por los cuales el aspirante ha sido convicto son de tal magnitud que, de haber sido cometidos por un abogado admitido a la profesión, hubiesen ameritado

---

[12] Id. a las págs. 373-374.

su suspensión. A tales efectos véase la Sec. 9 de la Ley de 11 de marzo de 1909, supra.

A la luz de estos pronunciamientos, procede concluir que la Comisión de Reputación no podrá certificar el buen carácter y reputación del aspirante. En virtud de esto, denegamos en estos momentos la solicitud de admisión al ejercicio de la abogacía presentada por el aspirante.

Se dictará la Sentencia correspondiente.

---

[13] *Id.*

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

Eduardo R. Ramos Muñoz

                                    EM-2001-03

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

Eduardo R. Ramos Muñoz

                                    EM-2001-03

SENTENCIA


San Juan, Puerto Rico, a 10 de octubre de 2001.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integral de la presente, se deniega la solicitud de admisión al ejercicio de la abogacía presentada por el aspirante, Eduardo R. Ramos Muñoz.

Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri emitió Opinión Concurrente. El Juez Presidente señor Andréu García no intervino.


Isabel Llompart Zeno
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:


Eduardo R. Ramos Muñoz              EM-2001-03


Opinión Concurrente emitida por el Juez Asociado señor FUSTER BERLINGERI.


San Juan, Puerto Rico, a 10 de octubre de 2001.


Concurro con el resultado al que llega la mayoría del Tribunal en el caso de autos, por una razón muy particular que estimo necesario expresar de manera precisa. La mayoría en su opinión Per Curiam, identifica varios fundamentos distintos con arreglo a los cuales podría afincarse su dictamen en este caso **pero no acoge particularmente ninguno de ellos**. En mi criterio, en cambio, me parece necesario fundamentar concretamente nuestro dictamen debido a las otras consecuencias que dimanan de lo que aquí resolvamos, que deben considerarse también. En otras palabras, del fundamento particular que adoptemos depende no sólo la decisión de admitir o

no al peticionario y otros como él al ejercicio profesional, sino que dependen también otros asuntos relativos a esta cuestión que deben pautarse.

No creo que deba admitirse al peticionario al ejercicio profesional debido a que no hay manera segura de saber de antemano si el peticionario habrá de cumplir cabalmente con las condiciones a que está sujeto bajo la sentencia suspendida que se dictó en su caso. Puede que sea muy probable que el peticionario ha de cumplir tales condiciones pero ello no es un hecho cierto en ningún caso de sentencia suspendida, y esa falta de clara certeza con respecto a si ha de cumplir la pena que le fue impuesta obviamente nos impide admitirle al ejercicio profesional. Dicho de otra forma, no puede admitirse a un convicto de delito grave al ejercicio profesional por lo menos hasta que haya cumplido la pena que le fue impuesta. Tal ejercicio profesional es un importante privilegio social que sencillamente no está disponible para los que tienen pendiente aún deudas penales que saldar con la comunidad.

Con arreglo a este criterio, la persona convicta de delito grave que esté sujeta a una sentencia suspendida **tampoco podría ser admitida al examen de reválida**. Así se le evitaría a tales personas la pérdida de tiempo, esfuerzos, dinero e ilusiones a que ha sido sometido el peticionario, a quien se le permitió tomar el examen de reválida para que ahora, después de aprobarlo, se le niegue la admisión al ejercicio profesional.

Además, con arreglo al criterio en que se ampara este voto concurrente en el caso de autos, **tampoco procedería que el aspirante pueda demostrar que posee rasgos idóneos de carácter y buena reputación, a pesar de estar sujeto a una sentencia suspendida**, como ha querido hacer el peticionario aquí. En su segunda reconsideración ante nos, el peticionario hace hincapié **en que no se le ha concedido una vista ante la Comisión de Reputación, aunque el Reglamento correspondiente y el debido proceso de ley le dan derecho a tal vista a cualquier aspirante al ejercicio profesional que haya aprobado el examen de reválida**. En mi criterio, el peticionario tendría derecho a tal vista si la razón de nuestro dictamen aquí fuese solamente el otro fundamento que se identifica en la opinión de la mayoría aquí: de que el

peticionario ha cometido un delito de tal magnitud que conllevaría la separación de abogados ya admitidos. Ello es así porque una mayoría de este Tribunal, con mi disenso, ya estableció en esta jurisdicción la norma de que aun los abogados que cometen delitos graves que aparejan depravación moral tienen derecho a ser escuchados antes de ordenarse su separación definitiva de la profesión, por si tienen atenuantes u otras consideraciones que el Tribunal deba conocer antes de decretar el desaforo. In re: Dubón, 2001 JTS 68; In re: Viera Pérez, 2001 JTS 91. Por analogía, pues, el peticionario debería tener derecho al menos a que se le escuche, antes de negarle la admisión al ejercicio profesional. En cambio, al amparo del criterio que expreso aquí, es evidente que el peticionario no tendría derecho a una vista o a que se le escuche ni siquiera con arreglo al concepto extremo del debido proceso de ley incorporado en nuestra jurisdicción en In re: Dubón, supra; y en In re: Viera, supra, en casos de abogados convictos de delitos graves que implican depravación moral. Si el fundamento para el dictamen de autos fuese el otro identificado por la mayoría en su opinión Per Curiam referida antes, entonces parecería **claramente inconsistente** que a abogados convictos de delitos graves que implican depravación moral, cuyas sentencias son ya finales y firmes, se les dé **la oportunidad para expresarse sobre su separación**, In re: Viera Pérez, supra, pero al peticionario se le niegue el derecho a una vista que establece el Reglamento de la Junta Examinadora.

La mayoría en su opinión Per Curiam no se expresa sobre estos asuntos; y al no formular un fundamento concreto para su dictamen aquí, deja cuando menos algunas interrogantes pertinentes sin contestar. Por ello, no puedo extenderle un voto de conformidad a esta opinión, y me ha parecido menester formular este breve voto concurrente.

Jaime B. Fuster Berlingeri
Juez Asociado
